FREDERICK SEWARD HURD, Respondent, v. GEORGE M. TAY-
LOR, Appellant.

WAGER CONTRACTS.   A broker cannot recover from a customer moneys
alleged to have been lost in stock transactions in the absence of proof of
actual sales or purchases of stock for his account; and the fact that he
offers no such proof and admits that the intention was that when such
transactions were closed the amount lost or won was to be decided by the
fluctuations of the market, renders them mere wager contracts upon which
a recovery cannot be sustained.

*Hurd* v. *Taylor*, 93 App. Div. 605, reversed.

(Argued March 14, 1905; decided April 11, 1905.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
March 19, 1904, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Hull Greenfield* and *John H. Sawyer* for appellant.   The
evidence does "conclusively establish" that the agreement
under which the plaintiff seeks to recover was a wager con-
tract and void, and that a nonsuit should have been granted.
(*Embrey* v. *Jemison,* 131 U. S. 336.)   The transactions detailed
by plaintiff were absolutely void.   (*Bigelow* v. *Benedict,* 70
N. Y. 202; *Kenyon* v. *Luther,* 19 N. Y. S. R. 32; *Story* v.
*Solomon,* 71 N. Y. 420; *Kingsbury* v. *Kirwan,* 77 N. Y.
612; *Yerkes* v. *Solomon,* 11 Hun,. 471; *Peck* v. *Doran &
Wright,* 32 N. Y. S. R. 405; *Dwight* v. *Bagley,* 38 N. Y.
,S. R. 112; 58 N. Y. S. R. 584.)   No recovery can be had for
money advanced by a broker to carry on bucket shop trans-
actions.   (*Irwin* v. *Williar,* 110 U. S. 499; *Embrey* v. *Jemi-
son,* 131 U. S. 336.)

*Amasa J. Parker* for respondent.   Respondent was simply
a broker, acting for appellant, his hand or agent.   What he

did he did for the appellant, and the money he advanced was for appellant. This contract was on its face valid. (*Hatch* v. *Douglass*, 48 Conn. 116 ; *Union National Bank* v. *Carr*, 15 Fed. Rep. 436 ; *Corbett* v. *Underwood*, 83 Ill. 324 ; *Rumsey* v. *Berry*, 65 Me. 570 ; *Pixley* v. *Boynton*, 79 Ill. 351 ; *Durant* v. *Bust*, 98 Mass. 161 ; *Story* v. *Solomon*, 71 N. Y. 420 ; *Bigelow* v. *Benedict*, 70 N. Y. 202 ; *Export Lum. Co.* v. *Brooklyn Saw Mill Co.*, 67 N. Y. 626 ; *Petrie* v. *Hannay*, 3 Term Rep. 418.) There was no evidence that Taylor did not own the stock he ordered plaintiff to sell, or that he did not intend to sell the stock which he ordered plaintiff to sell. That the Municipal Telegraph and Stock Company did not sell — that either party intended it as a wager or gambling, contract, or that the plaintiff knew the intention of the parties, or that the transaction was intended as a wager, sufficient to have justified the court in non-suiting plaintiff or taking the case from the jury. (*Cossand* v. *Hinman*, 1 Bosw. 207 ; *Bigelow* v. *Benedict*, 70 N. Y. 206 ; *Dwight* v. *Bagley*, 27 N. Y. Supp. 108 ; *Roundtree* v. *Smith*, 108 U. S. 277.) There was no evidence how the buyers of the stock, the Municipal Telegraph Stock Company, understood the contract of sale or what they intended it to do. Unless they understood it to be a wagering contract it was valid. To make a contract void as a gambling contract both parties must have so understood it. That one alone understood it so will not do. (*Dwight* v. *Bagley*, 38 N. Y. S. R. 115 ; *Story* v. *Solomon*, 71 N. Y. 423 ; *Irwin* v. *Williar*, 110 U. S. 509 ; *Roundtree* v. *Smith*, 108 U. S. 269 ; *Bigelow* v. *Benedict*, 70 N. Y. 202 ; *Embrey* v. *Jemison*, 131 U. S. 336 ; *Kingsbury* v. *Kirwan*, 77 N. Y. 612 ; *Harris* v. *Trumbridge*, 83 N. Y. 99 ; *Kenyon* v. *Luther*, 19 N. Y. S. R. 33.)

Cullen, Ch. J. The complaint alleged in general terms that the defendant was indebted to the plaintiff for moneys laid out and expended on the defendant's behalf in six several sums of money which constituted as many several causes of action. The defendant answered, interposing a general denial

and alleging that the sums claimed to have been expended by the plaintiff for the defendant were paid under a gambling contract between the parties dependent on the fluctuations in the market values of certain stocks. The only testimony given on the trial was that of the plaintiff himself. At the close of the evidence the defendant asked the court to dismiss the complaint on the ground that the plaintiff's testimony showed that the transactions between the parties did not contemplate an actual purchase of stocks but were mere wagers or bets on the fluctuations of the stock market. This request was refused and the question of the character and legality of the transactions was submitted to the jury for determination, which found a verdict for the plaintiff. The Appellate Division, by a divided court, has affirmed the judgment entered on that verdict, the minority holding that the testimony conclusively established that those transactions were mere wagers or betting contracts.

The law of this state as to the purchase and sale of stocks is well settled. The purchase of stocks through a broker, though the party ordering such purchase does not intend to hold the stocks as an investment, but expects the broker to carry them for him with the design on the part of the purchaser to sell again the stocks when their market value has enhanced is, however speculative, entirely legal. Equally so is a "short" sale, where the seller has not the stock he assumes to sell, but borrows it and expects to replace it when the market value has declined. But to make such transactions legal they must contemplate an actual purchase or an actual sale of stocks by the broker, or through him. (*Bigelow* v. *Benedict*, 70 N. Y. 202; *Yerkes* v. *Salomon*, 11 Hun, 471; *Kingsbury* v. *Kirwan*, 77 N. Y. 612; *Peck* v. *Doran & Wright Co.*, 57 Hun, 343; *Embrey* v. *Jemison*, 131 U. S. 336.) If the intention is that the so-called broker shall pay his customer the difference between the market price at which the stocks were ordered purchased and that at which they were ordered sold, in case such fluctuation is in favor of the customer, or that in case it is against the customer the customer

shall pay the broker that difference, no purchases or sales being
made, the transaction is a wager and, therefore, illegal. Such
business is merely gambling in which the so-called commission
for purchases and sales that are never made is simply the per-
centage which in other gambling games is reserved in favor of
the keeper of the establishment. The testimony given by the
plaintiff in this case is very meagre. He had a place of busi-
ness in Auburn where he purported to deal in the purchase
and sale of stocks. He states that he did not himself make
such purchases or sales, but telegraphed the orders received by
him to the Albany Municipal Telegraph & Stock Company, a
corporation as he understood, but of which and its business
methods he professes to have known almost nothing. The
arrangement between that company and the plaintiff was that
the plaintiff should keep half the commissions he received
while the profits on the stock transactions were taken or the
losses thereon borne by the Albany company. The plaintiff
testified that he received from the defendant various orders
for the sale and purchase of stocks, and losses having occurred
thereon he paid the amount thereof to the Albany company.
It is for such losses that this action is brought. There is no
proof in this case that the Albany company ever actually
bought or sold a single share of stock. The only testimony in
that respect is that of the plaintiff, who says that he tele-
graphed the Albany company to make such sales or purchases
and that the company reported it had done so. The right of
a broker to recover from his customer results solely from the
execution of the latter's orders. Even where the transaction
is entirely legitimate, if the broker fails to carry out the
order of a customer for the purchase or sale of stocks he
cannot recover of the customer the loss that would have
accrued had the order actually been executed; in other words,
he cannot bet against his customer. Therefore, in the case
before us had the motion for nonsuit been made on the
ground that there was no legal proof of any purchase or
sale of stocks the motion must have been granted. The
fact that no proof of that character was given is not without

force in determining the nature of the transactions between the parties, and in determining the nature of the business the plaintiff carried on.  On the witness stand he was naturally desirous of avoiding a disclosure of the real character of his business.  He fenced with counsel, but finally there was elicited from him the following testimony : " Q. It was not thought by you to be a regular sale of the scrip of the Colorado Fuel & Iron Company ?  A. No, sir.  *  *  * Q. But you expected a settlement would be made according to the market value when the transaction was closed — you expected to pay him in money if he won, and if he lost he would pay you money ?   A. I would not pay him any money, it would come from the house.  Q. The money would come through you ?  A. Yes, sir.  Q. You intended that when the transaction was closed the fluctuation of the market would decide who had won or lost ?  A. Yes, sir."  In the light of these admissions and of the fact that there was no proof of any actual sales or purchase of stock we agree with the minority of the learned Appellate Division in the opinion that the agreement under which a recovery is sought in this action was clearly shown to have been a mere wager contract and that the motion to dismiss the complaint on that ground should have been granted.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgment reversed, etc.