QUEEN CITY SAVINGS BANK & TRUST CO. v. REYBURN

(Circuit Court, E. D. Pennsylvania. July 31, 1908.)

No. 6.

1. BILLS AND NOTES—BONA FIDE PURCHASER—ACCOMMODATION PAPER.

The discount of an accommodation note by a bank and the credit of the proceeds to the account of the payee are not equivalent to parting with value, and the maker may cancel his obligation by proper notice to the purchaser at any time before it has actually parted with the money.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 908.]

2. EVIDENCE—BOOKS OF ACCOUNT—BANK BOOKS.

A loose leaf of a bank ledger, containing entries of transactions between the bank and a customer, is competent evidence in its behalf to prove such transactions, when properly proved by testimony of the bank's employés.

**3. BILLS AND NOTES—ACTION BY INDORSER—DEFENSES.**

Plaintiff bank discounted for a customer certain accommodation notes made by defendant under such circumstances as made it a bona fide holder thereof and entitled to recover thereon to the extent of the value it had parted with before being notified by defendant. A part of the proceeds of the discount had been paid into a fund owned by a third party, but against which, by an arrangement between them, plaintiff was authorized to charge back such paper discounted for the customer as should not be paid. *Held*, that such arrangement, to which he was not a party, was not available to defendant as a defense to the notes either to the extent of the entire fund or that portion of it arising from that particular discount.

Burton B. Tuttle and Bamberger, Levi & Mandel, for plaintiff.

Wm. N. Trinkle, John C. Bell, and J. Howard Gendell, for defendant.

J. B. McPHERSON, District Judge. This is an action brought by the plaintiff as indorsee, against the defendant as maker, of two promissory notes for $5,000 each, due at four months from October 20 and 25, 1906, respectively. The case having been submitted to the court without a jury, I find the facts to be as follows:

1. In the fall of 1906, the defendant was in need of money to carry on a business enterprise in which he had an interest, and in order to raise the needed funds he agreed with the Union Potteries Company, an Ohio corporation, through the agency of a broker in New York City, to make five promissory notes of $5,000 each. These notes were to be indorsed by the potteries company and negotiated wherever the money could be obtained, and the proceeds were to be divided equally between the potteries company and the defendant, by whom also the liability upon the notes was to be equally borne. The notes were duly executed toward the end of October and were placed in the broker's hands to be negotiated. Certain circumstances, which it is not necessary to detail, aroused the defendant's suspicions concerning the fairness and good faith of the transaction to which he had thus committed himself, and he took steps which resulted in the return to him of three of the notes. This action relates to the remaining two.

2. The notes in suit were offered to the plaintiff for discount by the potteries company about October 30th, and on that day the plaintiff addressed the following letter to the defendant:

"Mr. John E. Reyburn, Phila., Pa.—Dear sir: We have this day been offered some 4 mos. paper of yours by the Union Potteries Co., for discount, they claiming that this paper was given by you in payment of stock sold to you in their company. Would you be kind enough to telegraph us at our expense whether this is the situation? And confirm same by letter.

"Hoping that you will give us the desired information, we remain,

"Resp. yours,          The Queen City Savings Bank & Trust Co.

"Ernest Von Bargen, Sec'y."

The defendant replied under date of November 2d:

"Dear Sir: I have your favor of the 30th ult., and in reply beg to say that there must be some misunderstanding about the transaction in Union Potteries Company, as I have no understanding about taking shares of stock in that company. I did not wire because I thought it was better to communicate in writing with you.

"Yours very truly,                    John E. Reyburn."

Thereupon the plaintiff, on November 5th, addressed a second letter to the defendant:

"Dear Sir: We are in receipt of your favor of the 2d inst. and in reply will say that we do not understand your letter.

"We were offered two notes, one of October 20, 1906, and the other of October 25, 1906, for four months each at five thousand ($5,000) dollars each, signed by you, by Mr. Hart, vice president of the Union Potteries Co., who claims that these notes were given in payment of stock in either the Union Potteries Co., Pittsburgh, or the Huntington China Co., Huntington, W. Va., or both.

"In your letter you say you have no understanding about taking stock in the company. We wish you would let us know if you gave these notes for some other reason, and whether they are your bona fide notes, and will be paid at maturity.

"We are sorry that we are putting you to all this inconvenience, but we would like to be on the safe side before we discount these notes for the Union Potteries Company.

"Thanking you in advance, we remain

"Yours very truly,                    Ernest Von Bargen, Secretary."

This communication the defendant answered as follows, on November 8th:

"Dear Sirs: I beg leave to acknowledge receipt of your letter of the 5th inst. regarding my two notes, dated October 20th and October 25th, for $5,000 each.

"I desire to state, in reply thereto, that since writing you in answer to your letter of October 3d, the difference between the Union Potteries Company and myself regarding stock has been satisfactorily adjusted.

"The notes in question will be paid at maturity.

"Very truly yours,                    John E. Reyburn."

In reliance upon this correspondence, the plaintiff discounted the two notes on November 12th and placed the proceeds, namely, $4,885 on each note, to the credit of the potteries company.

3. In consequence of the defendant's suspicions, to which reference has been made in paragraph 1, he determined to stop the negotiation of the remaining two notes of the series, if possible, and on the evening of November 14th he sent the following night telegram to the plaintiff:

"Have discovered fraud since writing. Do not discount notes bearing my signature."

This telegram was received by the plaintiff before banking hours on November 15th, and was replied to as follows:

"Notes already discounted on strength of your letter November 8."

This reply was confirmed by a letter of the same date.

4. On November 12th the balance to the credit of the potteries company on deposit with the plaintiff was $1,778.14. This balance was increased by the discount of the notes to $11,548.14. On November 12th the potteries company drew a check for $2,500 upon this balance, on November 13th a check for $1,000, and on November 14th two checks for $1,250 and $4,000, respectively. These checks were duly honored by the plaintiff.

5. There is no evidence of fraud or bad faith on the part of the plaintiff, or of any knowledge on its part of fraud or bad faith on the part of the New York broker or of the potteries company. The

defendant received no consideration for the notes, either at the time of their execution or afterwards, and received no part of the proceeds of the discount; but there is no evidence, if the fact were important, that the plaintiff knew of the want of consideration or of the agreement that the defendant was to have one-half the proceeds of the discount.

6. Before suit was brought, the defendant refused to pay the notes either in whole or in part.

Upon these facts it seems to me that the law is settled, and that the following propositions govern the case:

1. The notes in suit are accommodation paper, and the defendant is the accommodation maker thereof.

2. The plaintiff is the bona fide holder thereof for value and before maturity.

3. Being accommodation paper, however, the mere discount of the notes, and the credit of the proceeds to the account of the potteries company, were not equivalent to parting with value.

4. The defendant was entitled to cancel his obligation by proper notice given to the plaintiff before it actually parted with value by honoring the checks of the potteries company.

5. As a result, the plaintiff is entitled to recover $6,971.86, with interest from, say, February 22, 1907.

In finding these facts, I have taken into consideration the depositions of the plaintiff's employés and the loose leaf of the ledger that was produced at the trial, believing the depositions and the loose leaf to be competent evidence. The numerous decisions in favor of its competency seem to me to be founded on excellent reason. The business of a bank is dealing in money, and the same reasons that have been found sufficient to warrant the admission of a merchant's books in evidence to prove a sale and delivery of goods apply in the case of a banker's books to prove his transactions in money with a customer. Moreover, the necessity of the situation furnishes another reason for admitting such entries as competent, but of course not conclusive, evidence of the dealings to which they relate. In the multiplicity of transactions in a banking institution, it is practically impossible to have better evidence, and the admissibility of the entries may therefore stand also upon the ground that they are ordinarily the best evidence of which the case admits. To the admission of the depositions and the entries referred to the defendant is granted an exception.

One word more may be said concerning the payment by the plaintiff of $2,500 on November 12th. The potteries company and the Huntington China Company were closely allied corporations, being, indeed, practically identical. The plaintiff was the holder of certain bonds of the china company. As partial security for their payment, it was agreed by the potteries company, on October 26, 1906, as follows:

"Cincinnati, O., Oct. 26, 1906.

"The Queen City Savings Bank & Trust Co., Cincinnati, Ohio—Gentlemen: For valuable consideration received, we hereby agree and bind ourselves to deposit twenty-five (25%) per cent. of all the commercial business paper discounted by you, for the account of the Union Potteries Co., to a special fund to be called Huntington China Company, Huntington, W. Va., sinking fund

.account, and it is hereby agreed the same shall not be subject to check, but shall be held to apply on the forty thousand ($40,000) dollars Huntington China Company, Huntington, W. Va., bonds held by you, it being understood that upon this sinking fund balance, you are to pay us interest at the rate of three (3%) per cent. per annum.

"Yours very truly,                    Union Potteries Company,
                                       "F. W. Fowler, President,
                                       "Max Hart, Vice President."

To this the china company agreed:

"Cincinnati, O., Nov. 12, 1906.

"Mr. F. W. Fowler, Pres't Huntington China Co., Pittsburgh, Pa.—Dear Sir: Inclosed we hand you authority signed by the Union Potteries Co., Max Hart, vice president, authorizing us to charge back any paper discounted for the Union Potteries Co., which, when due, would fail to be paid, either to the account of the Union Potteries Co. or the Huntington China Company Sinking Fund.

"We would be pleased to have you sign this authority, as the Huntington China Company, per yourself as president."

To this the china company replied on the same date:

"The Queen City Savings Bank & Trust Co., Cincinnati, Ohio—Gentlemen: In regard to the sinking fund account which you have credited to the Huntington China Co., would state that, in the matter of discounting our paper, in case any of it is not paid at maturity, and it is necessary to charge same to our account, and should our account not have sufficient balance to justify such charge, that you are authorized to charge such balance to the sinking fund account of the Huntington China Co.

"Yours very truly."

It was suggested upon the argument, although I did not understand the position to be much insisted upon, that the plaintiff was bound by this agreement to apply the $2,500, at all events—if not the whole $4,700, which it appears was in the sinking fund account—in relief of the defendant's obligation upon these notes. In my opinion the suggestion does not need an elaborate reply. The defendant was not a party to the agreement, whatever its scope may be, and has no right to avail himself of its terms. In the view most favorable to his interest, the best that can be said about the agreement is that it furnished the plaintiff with an additional security for the payment of such commercial paper as might be discounted for the potteries company, and that the defendant may have a valid claim to subrogation against this sinking fund after he has discharged his obligation to the plaintiff upon the notes in suit. In coming to this conclusion, I have not considered at all the letter of June 3, 1907.

The clerk is directed to enter a finding in favor of the plaintiff, in accordance herewith, upon which judgment may be entered in due course.