GILBERT S. RAYMOND, TRUSTEE, vs. FRANK E. PARKER.

Second Judicial District, Norwich, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The best evidence that the items contained in a bill of particulars were regularly charged to the defendant on the plaintiff's ledger, is the ledger itself; and therefore the admission of oral testimony to that effect, against an objection and without any excuse for the non-production of the book, is erroneous and prejudicial.

Evidence of what another said or reported that he had done, is mere hearsay and inadmissible to prove the alleged act.

In the present case the parties were at issue as to whether certain transactions in stocks on margin were bona fide purchases and sales, as contended by the plaintiff, or were mere wagers or bets upon the fluctuations of the market, as contended by the defendant. *Held* that testimony of the plaintiff broker, to the effect that his alleged agent in another State had reported that he had bought and sold the shares of stock as ordered from time to time, was purely hearsay and inadmissible in evidence to prove the fact of such purchases and sales.

A contract between a broker and his customer for the purchase of stocks on margin is not illegal, provided there is a bona fide intention to make actual purchases of the stock for delivery upon payment of the balance of the purchase price. If, however, the parties do not contemplate any actual purchases, but only the payment by one to the other of the differences in the market prices, as the shares rise and fall, their contracts are mere wagers and void.

This court cannot determine the validity of contracts relating to the purchase and sale of stocks upon margin, upon a finding which is based to a material extent on evidence improperly admitted. Under such circumstances the only remedy is a new trial.

Argued October 17th—decided December 19th, 1911.

ACTION by a trustee in bankruptcy to recover a balance alleged to be due a bankrupt stockbroker for purchases and sales of stocks and grain on margin, brought to and tried by the Superior Court in New London County, *Reed, J.;* facts found and judgment rendered for the plaintiff for $2,887, and appeal by the defendant. *Error and new trial ordered.*

A motion in this court to dismiss the appeal, because of unreasonable delay upon the part of the defendant in advancing the funds necessary to pay for printing evidence, was denied.

*Donald G. Perkins,* with whom was *Samuel Park,* for the appellant (defendant).

*Charles F. Thayer* and *George Curtis Morgan,* with whom was *Charles V. James,* for the appellee (plaintiff).

HALL, C. J.    The complaint alleges that Herbert S. Davis, for several years prior to 1908 (when he was adjudicated a bankrupt and the plaintiff was appointed trustee of his estate), had been engaged, at New London, "in the business of buying and selling stocks, grain and securities upon margins, as a broker"; that during three years prior to such adjudication the defendant had been one of his customers; and that during said time Davis "at the request and on the order of the defendant bought and sold stocks, grain and securities for the defendant and advanced money to keep good his margins as per bill of particulars."

Under the head of "Purchases" the first item of the bill of particulars, under date of August 20th, 1906, is "20 shares American Smelting & Refining Co. at 130½ . . . $2,610." There follow, under said heading of "Purchases" and under stated dates in 1906 and 1907, fifteen other items, giving the number and prices of other stocks, and one of May wheat, all of which purchase items are summed up at $34,345.    Following these, as credits, and under the heading of "Sales made on March 14, 1907," are the same items of stocks and May wheat described under the head of "Purchases," with the sale prices carried out, and summed up at $31,862.50.    The bill of particulars concludes with the statement, "Balance due to Trustee of Bankrupt

estate of Herbert S. Davis, $2,482.50;" that being the difference between the sums of said purchase and sale prices. There are no other charges or credits in the bill of particulars.

The answer denies the averments of the complaint above stated, and further avers, in substance, that the alleged contracts between Davis and the defendant were illegal and void; that Davis was engaged in conducting what is called a bucket shop, the business of which consists in making wagers upon the rise and fall of the prices of stocks on the New York stock exchange, with the understanding that no stocks are to be purchased or delivered; and that such was the real character of the alleged contracts between Davis and the defendant.

The judgment-file states that the issues were found in favor of the plaintiff.

The following are some of the facts which appear in the finding: At the time of the transactions referred to in the bill of particulars, Davis had an office in New London in which there was a blackboard having at its top the names of stocks dealt in on the New York stock exchange, and upon which were entered the quotations of purchases and sales on said stock exchange as they were reported by a ticker in the office. The office was connected by private wires with the Public Stock and Grain Company, and the Nolan Commission Company, having offices in New Jersey, and through which Davis transacted the business of his office. Neither Davis nor either of said New Jersey companies were members of the New York stock exchange, or of any other exchange.

The defendant ordered Davis to purchase the stocks named in the bill of particulars, and Davis transmitted the orders to one of said New Jersey companies. This was done without giving the name of the purchaser,

but by giving a number of the order. Orders to purchase were called "evens" and orders to sell "odds." When such orders were transmitted, the New Jersey company receiving the same reported back the execution of the same. When the price, at which any stock was ordered bought or sold, appeared upon the blackboard, as the price at which it was bought or sold on the New York stock exchange, the customer was immediately notified that the purchase or sale was complete at that price, and the customer was required to pay his margin, which was $1 for each share of stock ordered purchased. When the price of the purchased stock declined to the extent of $1 a share, Davis was required to advance further margin, and he then called upon the defendant to reimburse him for the money advanced. The stocks named in the bill of particulars were sold, when upon a decline in the market price the defendant refused to make the margin good, and the then selling price was credited to the defendant. The balance shown by the bill of particulars is the amount advanced by Davis for the defendant to the New Jersey companies, and which he has refused to pay.

Neither in the transactions named in the bill of particulars, nor in any of the many other similar transactions between them, did either the defendant or Davis receive any certificate of the stock ordered purchased. No interest was ever charged or claimed by Davis, upon the transactions with the defendant, nor was the defendant ever credited with any dividends upon the stock claimed to have been purchased.

Upon the trial in the Superior Court the plaintiff, having testified in chief, upon direct examination, that Davis assisted him in preparing the bill of particulars, was asked by his counsel from what the bill of particulars was prepared. The witness answered, from his ledger. To this evidence the defendant objected upon

the ground that the book itself was the best evidence of its contents.   The court admitted the testimony.

This ruling was clearly erroneous.   It in effect permitted the plaintiff to support the averments of the complaint, by his oral testimony that the items of the bill of particulars were regularly charged upon Davis' books, without producing them, and when, as the court finds, they were not lost or destroyed but were in the hands of the public prosecutor in New London.

Upon the trial the following questions were, against the defendant's objection, permitted to be asked of and answered by Davis upon his direct examination as a witness for the plaintiff: "Q. On August 20th, 1906, in the bill of particulars, appears 20 shares American Smelting and Refining Company at 130½, what does that represent? . . .   A. Yes, I believe there was such a transaction. . . .   Q. What was done upon giving that order?   A. I telegraphed the order to the Nolan Commission Company, over private telegraph wire. Q. Did you or not have an operator in your office? . . . A. I did there, yes.   Q. And was or not this order given by you to your operator?   A. It was.   Q. And then transmitted by him? . . .   A. Why, presumably; I don't know, I might have . . . telegraphed it myself. I cannot tell.   It is two years and a half back. . . . Q. What in this particular was the next step?   A. I received a confirmation by wire. . . .   Q. Did you hear in this case, the reply in relation to the order? . . . Q. In relation to this order, do you know whether or not it was followed by a fulfillment of it? . . .   A. Yes, I knew it was."

There were similar questions and rulings respecting the other items of the bill of particulars under the head of "Purchases."   Regarding the items of credits, the following questions were, against the defendant's objections, permitted to be asked of and answered by said

Raymond *v.* Parker.

witness Davis: "Q. Did you or not give orders to close all of these stocks out? . . . A. I think I gave them verbally to the operator. . . . Q. What was the next step after the order was given? . . . A. I received a confirmation from the Nolan Commission Company that they were sold, and then I informed Mr. Cantwell [the claimed representative of the defendant] to that effect."

Regarding this testimony, so objected to, the record shows that counsel for the defendant further claimed as a matter of law that evidence that the defendant gave an order, and that Davis telegraphed it to the alleged commission house, and that the latter telegraphed back that it was filled, was insufficient proof of an actual purchase, and the trial court overruled said claim.

The rulings as to the admissibility and effect of this evidence were erroneous. What the real character of the transactions between Davis and the defendant was, was the principal matter in dispute. The testimony of Davis, as above detailed, was evidently offered for the purpose of proving the averments of the complaint, that Davis actually bought the stocks in question as ordered by the defendant. Davis did not claim to have purchased them himself, but claimed that he had transmitted the defendant's orders to one of the named New Jersey companies, and that such company executed the same. It was the plaintiff's duty to prove, and he attempted to prove, that at his request his correspondent, the New Jersey company, actually executed the orders given by the defendant, as alleged in the complaint. What the New Jersey company in fact did was not proved by evidence of what such company reported to Davis that it had done. Such report was mere hearsay evidence. There was no proof that the New Jersey companies bought or sold any of the stocks described in the complaint. *Hurd* v. *Taylor*, 181 N. Y. 231, 234, 73 N. E. 977.

The defendant claimed that the arrangements shown to have been entered into between Davis and the defendant were mere gambling transactions. This claim the trial court overruled.

It appears that neither the defendant nor Davis ever received any certificate of any of the stocks alleged to have been purchased. Whether the New Jersey companies, with whom Davis transacted business, but who could not themselves purchase stock on the New York stock exchange, ever received certificates of the stocks in question, or ever made any contracts by which they could deliver the certificates of such stocks to the defendant, upon payment by him of the prices at which he had ordered them, less the margins he had paid, does not at all clearly appear, although Davis testified that the certificates would, at any time, have been delivered upon such payment.

Although contracts for the purchase of stocks of fluctuating values upon a margin are speculative, they are not necessarily for that reason illegal, when there is a bona fide employment of the broker to make actual purchases of the stock to be held for delivery upon payment of the purchase price. But contracts relating to stocks and other commodities of fluctuating prices when there is no actual purchase, and by which the parties contemplate only the payment by one to the other of the difference in market prices, as they rise or fall, are mere gaming contracts, and are void. *Hatch* v. *Douglas*, 48 Conn. 116, 127; *Skiff* v. *Stoddard*, 63 id. 198, 223, 26 Atl. 874 (overruling *Ingraham* v. *Taylor*, 58 Conn. 503, 20 Atl. 601); *Ling* v. *Malcom*, 77 Conn. 517, 525, 59 Atl. 698; *Hurd* v. *Taylor*, 181 N. Y. 231, 234, 73 N. E. 977.

The complaint in this case describes a valid contract. But the finding by the trial court of the issues regarding the alleged contract and its performance was based, to

a material extent, upon inadmissible evidence. We are not therefore in a position to determine what the real transactions between Davis and the defendant were, nor to decide whether the contracts between them were or were not legal and valid.

There is error and a new trial is ordered.

In this opinion PRENTICE, THAYER and RORABACK, Js., concurred.

WHEELER, J. (dissenting). I concur in the opinion of the court that there was error in the admission of evidence, but am of the opinion that upon this record the court should remand the case with instruction to enter judgment for the defendant.

The facts in the evidence certified to us, indeed, those stated in the finding and in the opinion,—purchases and sales of stock and grain on a one per cent. margin and a one eighth of one per cent. charge for commission by Davis in New London through a foreign correspondent, and neither a member of any exchange, no certificates given, no interest charged for carrying the stock and grain, no dividends credited though many earned, the purchase or sale complete when its price was reached by a purchase or sale on the New York stock exchange and recorded from telegraphic advices on a blackboard in Davis' New London office, and this, too, whether the purchase or sale was a small lot order or not,—all indicate a plain gambling transaction. The orders were mere wagering contracts on the fluctuations of the market, with no actual purchases or sales, and no intent that any such be made.

All the business world will, we think, recognize the nature of Davis' business as that of a "bucket shop," and these transactions mere wagers on the market.

If my conclusion as to the meaning of these facts is correct, a new trial would be a useless proceeding.