T. Barbour Brown et als. *vs.* Thomas M. Canty.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued April 12th—decided June 21st, 1932.

*Brien McMahon* and *Robert M. Wolfe, Jr.,* for the appellant (defendant).

*Sidney Vogel,* for the appellees (plaintiffs).

AVERY, J. On the trial before the jury, a verdict was returned in favor of the plaintiffs for the amount of plaintiffs' claim, with interest. The defendant moved the court to set aside this verdict, and from its refusal so to do the defendant has appealed, assigning as error the refusal of the court to set aside the verdict, and also certain rulings on evidence.

From the evidence, the jury might reasonably have found that the plaintiffs were commission brokers, selling and buying sugar and other commodities for customers for a commission, and dealing through members of various commodity exchanges. The plaintiffs do not deal in stocks or bonds.

Prior to and during 1928, Herbert Schwartz, a partner in the plaintiff firm, was friendly with the defendant, and offered to set up for Canty a credit of $1000 on the plaintiffs' books whenever he felt like trading in sugar. Thereafter, on October 3d, 1928, the plaintiffs accepted an order over the telephone from Canty to purchase, for his account, 50 tons of July sugar, and did purchase the same on the New York Coffee and Sugar Exchange at 2.25 cents per pound.

On October 27th, they executed, for his account on that exchange, a purchase order for 50 tons of July sugar at the same price; on November 9th, 1928, they sold this contract at 2.27 cents per pound. These transactions showed a profit of $44.80, less a commission of $50 and war tax of 52 cents, or an actual loss to Canty of $5.72. On September 10th, 1928, the plaintiffs purchased, by his direction, 100 tons of July sugar at 2.36 cents per pound; September 20th, 100 tons at 2.30 cents, and February 19th, 1929, 100 tons at 2.08 cents. On April 1st, 1929, they sold 50 tons at 1.98 cents; and, on the same day, 250 tons at 1.97 cents, showing a net loss to Canty, including commissions and war tax, of $1999.38; leaving his total indebtedness on April 2d, 1929, in the amount of $2005.10. These purchases and sales were executed on the New York Coffee and Sugar Exchange through a broker by the plaintiffs; and, on the sale of the last sugar April 1st, 1929, pursuant to Canty's directions, the plaintiffs actually paid the loss, being the difference between the purchase and sales prices.

The plaintiffs in chief produced a witness who testified that a leaf taken from a loose-leaf ledger was the original book of entry showing the Canty transaction, and that he had made up the account on that sheet. He further testified that it was the original sheet, and that it contained the full and only record of the transaction; that there were no other books or sheets in the office showing it. Being objected to as an incomplete record, it was admitted by the court over the objection. If the court was satisfied that the entries on the sheet were made in the regular course of business and contained a complete record of the transaction, and that it was the only book in which the details thereof were first collected together, it was within the court's discretion to admit it without requiring the

production of other sheets in the ledger having no bearing upon the matter in controversy between the parties. *Hawken* v. *Daly,* 85 Conn. 16, 18, 81 Atl. 1053; *Queen City Savings Bank & Trust Co.* v. *Reyburn,* 163 Fed. 597, 600; *Shepherd* v. *Butchers Tool & Hardware Co.,* 198 Ala. 275, 73 So. 498, 500; *United Grocery Co.* v. *Dannelly & Son,* 93 S. C. 580, 77 S. E. 706; *Wylie* v. *Bushnell,* 277 Ill. 484, 115 N. E. 618, 622; *Lewis* v. *England,* 14 Wyo. 128, 82 Pac. 869, 2 L. R. A. (N. S.) 401, 405; 10 R. C. L. 1178; 22 C. J. 870. It later developed that some of the entries on this sheet were, in fact, made from oral statements to the bookkeeper and some from memoranda furnished him by others connected with the firm. The correctness of a ruling on evidence is to be determined by the situation as presented to the court when the evidence was offered. When, later, it developed that some of the entries had been made from memoranda furnished the bookkeeper by other members of the office force, if the appellant had desired to attempt to take advantage of that situation, a motion to strike out should have been made. No such motion was, in fact, made, but on the contrary a partner in the plaintiff firm subsequently testified of his own knowledge to all matters shown on the exhibit. There was no error in the ruling complained of under the circumstances disclosed by the record.

Over objection by the defendant, a witness for the plaintiffs was permitted to refresh his recollection by examination of the bill of particulars in the case. There was no error in this ruling. Any memoranda which can in fact stimulate the present recollection of a witness can usually be used whether made by the witness or not, whether it be the original or a copy, or whether made at the time of the events testified to,

or not. *Neff* v. *Neff*, 96 Conn. 273, 280, 114 Atl. 126; *Turner* v. *Turner*, 90 Conn. 676, 680, 98 Atl. 324.

The defendant claims that the verdict should have been set aside because the evidence does not disclose that the orders for the purchase of the sugar were actually executed. This claim overlooks the fact that the entries made in the books of a merchant in the regular course of business are evidence of the transactions therein set forth. General Statutes, § 5878; *Smith* v. *Law*, 47 Conn. 431, 435; *Plumb* v. *Curtis*, 66 Conn. 154, 162, 33 Atl. 998. In addition, there was evidence that the plaintiffs actually paid for the contracts. It was clearly for the jury to determine from this evidence whether the orders were actually executed, or not.

The defendant's further claim is that the verdict of the jury should have been set aside because the dealings were mere gambling transactions, and illegal. In *Irwin* v. *Williar*, 110 U. S. 499, 507, 508, 4 Sup. Ct. 160, the Supreme Court of the United States approved an instruction in regard to a contract of this character in the following language: "The burden of showing that the parties were carrying on a wagering business, and were not engaged in legitimate trade or speculation, rests upon the defendant. . . . The law does not, in the absence of proof, presume that the parties are gambling. A person may make a contract for the sale of personal property for future delivery which he has not got. Merchants and traders often do this. A contract for the sale of personal property which the vendor does not own or possess, but expects to obtain by purchase or otherwise, is binding if an actual transfer of property is contemplated. A transaction which on its face is legitimate cannot be held void as a wagering contract by showing that one party only so understood and meant it to be. The proof must go further,

and show that this understanding was mutual—that both parties so understood the transaction." This language was afterward referred to in *Bibb* v. *Allen*, 149 U. S. 481, 491, 492, 13 Sup. Ct. 950, and states the law as it is generally accepted upon this subject. *Raymond* v. *Parker*, 84 Conn. 694, 700, 81 Atl. 1030; *Skiff* v. *Stoddard*, 63 Conn. 198, 223, 26 Atl. 874; *Hatch* v. *Douglas*, 48 Conn. 116, 127; Meyer, Law of Stockbrokers, 232; 6 R. C. L. 780, 781. "A contract for the sale of personal property to be delivered in the future is not invalid merely because the vendor, at the time the contract was made, neither has the property, nor has entered into any contract to buy it, nor has any other means of getting it than to go into the market and buy it." 6 R. C. L. 780. "It is . . . perfectly competent for the parties, after having entered into a valid contract for sale for future delivery, to agree upon the settlement thereof by payment of differences between the contract price and the market price, instead of actual delivery." 6 R. C. L. 783. Whether a contract for future delivery is valid or a wagering contract depends, in the last analysis, on the intention of the parties thereto. If an actual sale and delivery of a commodity was intended at the time the contract was made, it is a valid contract, even though the commodity may, in fact, never be delivered and the parties may settle the contract by the payment of differences. The question as to whether a contract is a wagering one is usually one of fact for the jury. The jury might have found that the plaintiffs in this case actually bought and sold for the defendant contracts for future delivery of sugar on an established exchange, and that, under the agreement of the parties, the plaintiffs could have required the defendant to accept the contracts and pay them the amount due as his brokers on account of their purchases. When each

transaction was completed, a confirmation sheet was sent to the defendant, setting forth what had been bought or sold at defendant's risk and these confirmation sheets contained, among other things, the statement that "all orders for the purchase and sale of commodities for future delivery are received and executed with the distinct understanding that actual delivery is contemplated, and the party giving the order so understands and agrees." The defendant had ample credit with the plaintiffs for the actual purchase of any of these orders, and was not sold out until his credit margin had become impaired by a fall in price, and he had refused to secure his purchase by additional margin. The fact that interest was not charged by the brokers on these transactions is of no controlling importance, because the purchases were commodity futures and such a contract would not carry interest until liquidated.

The case of *Raymond* v. *Parker*, 84 Conn. 694, 81 Atl. 1030, relied upon by the appellant, is not in point. That suit involved the purchase and sale of stocks on margin, and the broker had no evidence to prove that the stocks were actually bought or sold, except hearsay. The case was reversed on appeal because of a ruling of the trial court admitting such hearsay evidence over objection.

The trial judge adequately summarized the situation of the parties in the instant case when he said, in his memorandum of decision refusing to set aside the verdict in favor of the plaintiff: "The defendant bought a commodity. His judgment was that the price would rise and that he could sell it at a profit before the delivery date. As has sometimes happened lately, the market kept on going down instead of up, and he had a loss instead of a profit; then he refused to pay." The

trial court did not err in refusing to set aside the verdict.

There is no error.

In this opinion the other judges concurred.