495 A.2d 1

**Lawrence JOHNSON**

v.

**STATE of Maryland.**

**Nos. 21, 28, Sept. Term, 1984.**

Court of Appeals of Maryland.

July 17, 1985.

Motion for Reconsideration Denied Sept. 3, 1985.

488

494

498

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, and Julia Doyle Bernhardt, Asst. Public Defender, Baltimore, on brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., and Deborah K. Chasanow, Asst. Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit of Maryland (retired), specially assigned.

COUCH, Judge.

Lawrence Johnson and Dwayne Mayers were charged in the Circuit Court for Baltimore County with causing the death of 78 year old Esther Rosenblatt. After Johnson's motions for severance and removal were granted, Johnson was tried and convicted before a jury in the Circuit Court for Harford County of first degree premeditated murder, daytime housebreaking and robbery.[1] The same jury subsequently sentenced Johnson to death; however, because the court (Close, J.) later determined that its instruction as to joint principals in the first degree was inadequate, the sentence was vacated and a new sentencing proceeding ordered. A second jury was impanelled and the death sentence was again imposed.

On this direct appeal,[2] after carefully scrutinizing the record and Johnson's numerous challenges to the trial and second sentencing proceeding, we affirm.

## The Facts

The tragic events surrounding the Rosenblatt murder were revealed through testimony adduced at trial and by Johnson's confession to law enforcement authorities.

The record establishes that on January 9, 1979, Johnson and his close friend and cousin, Dwayne Mayers, decided to secure some extra spending money. They agreed that burgling a house presented their most profitable option. A

---

**1.** After removal, Mayers was tried in the Circuit Court for Anne Arundel County and found guilty of murder while committing a robbery. Mayers was sentenced to life imprisonment.

**2.** Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 414.

home at 6822 Fox Meadow Road in Baltimore County—the Rosenblatt home—was selected for this criminal endeavor.

A basement window, easily broken, provided the means of entry. Once inside, the sounds of Miss Rosenblatt's humming informed them they were not alone in the dwelling.

Johnson's confession disclosed that at this juncture he stealthily proceeded to Miss Rosenblatt's location and grabbed her from behind. He demanded to know the whereabouts of any cash. Miss Rosenblatt was confused and did not respond in a manner satisfactory to the men. She led them to a bedroom and surrendered the $10 found in her billfold. Mayers performed his own search of the premises and discovered a sum of money amounting to less than $200.

According to Johnson, Miss Rosenblatt's inadequate cooperation, coupled with the men's desire to leave no witnesses to their act, spelled the victim's demise. First she was taken to a spare room where Johnson stated that he repeatedly jumped on her chest in an attempt to induce a heart attack. These futile efforts only succeeded in fracturing the victim's ribs and induced cries of agony from her.

Johnson next seized a broom and attempted to beat the woman to death; a break in the handle rendered this instrument useless.

Finally, Johnson and Mayers decided to kill the victim by hanging her with several of the men's ties that they had spied in the closet of the room. First they took a number of these implements and bound Miss Rosenblatt's hands and feet. Next, with an additional tie, they secured the victim's ankles to the closet doorknob. Her undergarments were pulled down to her knees.

An electric cord was then ripped from a nearby radio and cinched to a bedpost. A loop and slipknot were fashioned with the free end and placed around the victim's neck. As one man slammed the closet door the other kicked the bed in the opposite direction; this forced the victim to be sus-

pended from the ground by her neck and ankles and caused her to be strangled from the weight of her own body.

Johnson stated that the men attempted to divert suspicion and obscure their motive for the torture and killing of Miss Rosenblatt by writing on a wall near the deceased "Halter Skilter Gang (sic)," "B.P." and "W.A.S.T." A circle, arrow and squiggly line were also drawn. In the kitchen was found an apple placed on each of the four stove burners, along with a burned object in the oven.

The police received a break in the case when Johnson was questioned while incarcerated on another murder charge.[3] Authorities also separately interrogated Mayers concerning his role in the Rosenblatt murder. Both men confessed to the crime, with each man claiming that he alone tied and strangled the victim to death. Based on this and other evidence, the men were charged as joint perpetrators of the crime. After severance, Johnson was tried and convicted of murder in the first degree, and sentenced to death. This direct appeal followed.

Additional facts will be supplied in the appropriate sections dealing with Johnson's legal arguments.

## I

Twenty issues are raised by Johnson for our consideration in this appeal. First, he contends that the trial court should have permitted testimony from several medical sources regarding his diminished capacity to commit first degree murder. While Johnson recognizes that we have previously ruled out admitting evidence of this type so as to establish a defense to first degree murder, see *Johnson, supra,* note 3, he urges us to reconsider this holding in light of Judge Eldridge's dissent in that case.

■ We extensively discussed our reasons for not permitting testimony and evidence of this kind in *Johnson, supra,*

---

**3.** Conviction affirmed and case remanded for resentencing, *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982).

292 Md. at 417–29, 439 A.2d at 549–556. We reasoned, in part, that "because the legislature, reflecting community morals, has, by its definition of criminal insanity, already determined which states of mental disorder ought to relieve one from criminal responsibility, this Court is without authority to impose our views in this regard even if they differed." *Id.* at 425–26, 439 A.2d at 554. We reaffirmed this holding in *Stebbing v. State*, 299 Md. 331, 344, 473 A.2d 903, 909, *cert. denied,* —— U.S. ——, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984), and do not choose to depart from it.

## II

Johnson next argues that the court erred in admitting into evidence certain photographs of the victim. The contested photographs consisted of one color photograph of the victim taken at the scene of the crime, and five black and white photographs contained in the autopsy report.

■ We have consistently held that whether or not a photograph is of practical value in a case and admissible at trial is a matter best left to the sound discretion of the trial judge. *Bowers v. State*, 298 Md. 115, 135–36, 468 A.2d 101, 111–12 (1983), quoting *Cook v. State*, 225 Md. 603, 608, 171 A.2d 460, 463 (1961), *cert. denied,* 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398 (1962). A court's determination in this area will not be disturbed unless plainly arbitrary. *Id.* Under this standard, we have permitted the reception into evidence of photographs depicting the condition of the victim and the location of injuries upon the deceased, *Clarke v. State*, 238 Md. 11, 21–22, 207 A.2d 456, 461–62 (1965); the position of the victim's body at the murder site, *Brice v. State*, 264 Md. 352, 368–69, 286 A.2d 132, 140 (1972); and the wounds of the victim, *Madison v. State*, 200 Md. 1, 7–8, 87 A.2d 593, 595 (1952). On certain occasions, photographs have also been admitted to allow the jury to visualize the atrociousness of the crime—a circumstance of much import where the factfinder must determine the degree of murder.

*See Fuller v. State,* 45 Md.App. 414, 420–21, 413 A.2d 277, 280–81 (1980).

■ Considering the color photograph first, we perceive no error or arbitrariness in the trial court's ruling as to its admissibility. The photograph in question was taken at the Rosenblatt residence and portrayed the location of injuries on the victim's body. This corroborated Johnson's confession that he first beat, and then killed, Miss Rosenblatt. Objections by the defendant to two other color photographs were sustained by the court.

■ The five black and white photographs were also correctly admitted into evidence. These photographs were part of the medical examiner's record and are ordinarily admissible at trial subject to the discretion of the trial judge. *Bowers, supra,* 298 Md. at 135–36, 468 A.2d at 111–12. *See also,* Maryland Code (1982), Health-General Article, § 5–311(d) (a medical examiner's record is competent evidence in any court in this State of the matters and facts contained in it; "record" means the result of a view or examination of or an autopsy on a body). We find no abuse of discretion in the admission of these photographs.

Johnson further challenges the photographs by contending that the photographs did not illustrate any issue in controversy and that they were cumulative proof of what was already in evidence.

We find this argument unpersuasive. We have previously held that photographs of the deceased are admissible even where the location of injuries was previously described and conceded by the defendant. *Smith v. State,* 182 Md. 176, 187, 32 A.2d 863, 867 (1943); *Snowden v. State,* 133 Md. 624, 631, 106 A. 5, 8 (1919). The Court reasoned that since the photographs were mere representations of what was already in evidence, their introduction could not be held to have injured the accused. *Smith,* 182 Md. at 187, 32 A.2d at 867.

Moreover, all photographic evidence is in some sense cumulative. The very purpose of photographic evidence is

to clarify and communicate facts to the tribunal more accurately than by mere words. *Pearson v. State,* 182 Md. 1, 8–9, 31 A.2d 624, 627 (1943). When such evidence is offered, it is for the trial judge, in his discretion, to determine if the pictures are probative and admissible.

The admitted photographs satisfy this test.

### III

After Judge Close determined that a new sentencing proceeding was warranted, Johnson filed a motion to automatically remove his case to Baltimore County. Noting that Johnson had previously exercised a removal right in transferring the case from Baltimore County to Harford County, Judge Close denied the motion for an additional change of venue. Johnson argues in this exception that he was entitled to multiple automatic rights of removal under former Maryland Rule 744.[4]

The logical starting point in any analysis of a party's right to remove a case is the State Constitutional provision which defines and controls that right. Article IV, § 8 of the Maryland Constitution mandates in pertinent part:

---

**4.** Former Rule 744 (1957, 1983 Cum.Supp.) provided, *inter alia:*
"a. *Capital Cases.*
When a defendant is charged with an offense for which the maximum penalty is death and a party files a suggestion under oath that he cannot have a fair and impartial trial in the court in which the case is pending, the court shall order that the case be transmitted for trial to another court having jurisdiction. A suggestion filed by a defendant shall be under his personal oath. A suggestion filed by the State shall be under the oath of the State's Attorney.
 b. *Non-Capital Cases.*
When a defendant is charged with an offense for which the maximum penalty is not death and a party files a suggestion in compliance with the requirements of section a of this Rule, the court shall order that the case be transmitted for trial to another court having jurisdiction only if it is satisfied that the suggestion is true or that there is a reasonable ground for it. A party who has obtained one removal may obtain further removal pursuant to this section."
The current Rule for removal in circuit court cases is found at Rule 4–254(b) (1984 Repl.Vol.).

"(b) In all cases of presentments or indictments for offenses that are punishable by death, on suggestion in writing under oath of either of the parties to the proceedings that the party cannot have a fair and impartial trial in the court in which the proceedings may be pending, the court shall order and direct the record of proceedings in the presentment or indictment to be transmitted to some other court having jurisdiction in such case for trial.

(c) In all other cases of presentment or indictment, ... in addition to the suggestion in writing of either of the parties to the cause or case that the party cannot have a fair and impartial trial in the court in which the cause or case may be pending, it shall be necessary for the party making the suggestion to make it satisfactorily appear to the court that the suggestion is true, or that there is reasonable ground for the same; and thereupon the court shall order and direct the record of the proceedings in the cause or case to be transmitted to some other court, having jurisdiction in the cause or case, for trial." (1874, ch. 364, ratified Nov. 2, 1875; 1980, ch. 524, ratified Nov. 4, 1980.)

We have previously observed that the Constitutional provisions governing removal have undergone significant alterations over the years. *See, e.g., Heslop v. State,* 202 Md. 123, 126–30, 95 A.2d 880, 881–83 (1953). The present provision emerged from an ancestry which had variously allowed either unlimited removal rights to a party, or which carefully circumscribed those rights by subjecting the removal to a court's discretion. *Compare* Md. Const., Art. IV, § 28 (1851) (court shall order removal upon written affidavit) and Md. Const., Art. IV, § 8 (1867) (removal upon written suggestion and affidavit), *with* ch. 55, proposed Act of 1804, ratified 1805 as amendment to Constitution of 1776 (request for removal must be supported by affidavit or other proper evidence; removal to another judge within judicial district only) and Md. Const., Art. IV, § 9 (1864) (party must make it satisfactorily appear to court that party cannot obtain a fair trial).

The particular language of the current provision was chosen so as to narrow the right of a party to remove a case and end the abuse which resulted from numerous requests for removal. *Johnson v. State,* 271 Md. 189, 194, 315 A.2d 524, 527–28 (1974). Other evils perceived over the years by a liberal removal policy included interminable delays, wastage of court time and taxpayers' money, and great inconvenience to parties and witnesses. *See Perkins v. Eskridge,* 278 Md. 619, 647–48, 366 A.2d 21, 38 (1976).

We come now to the question posed by Johnson. As would be expected when dealing with a Constitutional provision of this vintage, various pronouncements have already been given by this Court which bear directly on the issue at hand. Thus, we have declared that where a defendant in a criminal case is subject to the death penalty, his right to remove a case is, in the first instance, absolute. *Johnson v. State,* 258 Md. 597, 600–01, 267 A.2d 152, 154 (1970). Further removal, we have stated, requires the party seeking the change to make a showing that there were reasonable grounds to believe he could not secure a fair trial. *Id. See also, Veney v. State,* 251 Md. 182, 191, 246 A.2d 568, 573 (1966), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969) ("the absolute right of removal can be exercised only once"); *Lee v. State,* 164 Md. 550, 552, 165 A. 614, 615, *cert. denied,* 290 U.S. 639, 54 S.Ct. 56, 78 L.Ed. 555 (1933) (and cases cited therein) ("the right [of removal] had been and can only be exercised once").

These precepts would ordinarily have ended the discussion of this issue, and compelled a ruling against appellant, had Johnson not raised two additional contentions for our further examination. First, Johnson suggests that the one removal principle is not applicable to him since Rule 744, applicable to this proceeding, does not specifically limit him to a single right of removal. Johnson claims that this omission entitles him to multiple removal power. He also notes, in further support of this argument, that under former Rules 738 and 542,[5] the requirements for additional

---

5. Superseded Rule 738 provided:

removal were specifically set out in the text of the provision. See Rule 738(c). With this observation, Johnson argues that the omission previously noted in Rule 744 was intentional so as to grant him multiple removal rights. He finally alleges, as indeed he must, that the *Johnson* and *Veney* holdings, *supra*, are no longer good law since they were decided when Rules 738 and 542 were in effect.

As a second matter, Johnson contends that a sentencing proceeding is in reality a new trial, and that he is entitled, if the one removal per trial principle is still sound law, to a fresh right of removal prior to commencement of this second "trial" under Rule 744.

Johnson's first contention fails for several reasons. First, Johnson's argument necessarily assumes that a party's right of removal springs from the Rules of Procedure, and that a party may acquire additional removal rights as the Rules are periodically revised.

---

"a. *Civil Rule Applicable.*

Rule 542 (Removal) except for subsection (j), shall apply to removal in criminal proceedings, subject to sections b, c and d of this Rule.

b. *Additional Requirement.*

Except where the offense is punishable by death, in addition to complying with Rule 542 a 1 (Removal—Right of—Suggestion Under Oath), it shall be necessary for the party making such suggestion to make it satisfactorily appear to the court that such suggestion is true, or that there is reasonable ground for the same.

c. *Further Removal.*

A party may have a further removal upon compliance with section a of this Rule, and in addition, such party shall make it satisfactorily appear to the court that such suggestion is true or that there is reasonable ground for the same."

Superseded Rule 542 stated:

"a. *Right of—Suggestion Under Oath.*

1. Suggestion Under Oath—Reason.

In actions at law, including issues from the Orphans' Court and appeals from the Workmen's Compensation Commission, pending in any of the courts of law of this State, upon suggestion in writing under oath of either of the parties to the action and not of counsel, that such party cannot have a fair and impartial trial in the court in which the same may be pending, the court shall order and direct the record of proceedings in the action to be transmitted to some other court having jurisdiction in the action, for trial."

■ This first assumption is incorrect. The source of the right of removal is found in the Constitution of this State, not the Rules of Procedure. That document, and the specific provision (Art. IV, § 8), controls. *Gray v. State*, 224 Md. 308, 315, 167 A.2d 865, 868 (1961). Our Rules of Procedure merely implement the right already delineated in that organic document. The judicial branch of government will not expand this right. *Bullock v. State*, 230 Md. 280, 285, 186 A.2d 888, 891 (1962).

■ Moreover, cases other than *Johnson* and *Veney*, *supra*, recognize the limitation on the automatic right of removal. These cases preceded the existence of Rules 738 and 542, but nevertheless held that there is only one absolute removal right. For example, in *Lee v. State, supra*, we acknowledged that the right of removal "had been and can only be exercised once" by the same party. 164 Md. at 552, 165 A.2d at 615. The Rule governing removal at that time was found at Annotated Code (Bagby), Art. 75, § 109 (1924, 1929 Supp.). Article 75, § 109 was virtually identical with Art. IV, § 8 of the Maryland Constitution. Similarly, Rules 738 and 542 were not yet applicable when *Cooke v. Cooke*, 41 Md. 362, 368 (1875) and *Price v. State*, 8 Gill 295, 307 (1849) were decided. Both cases indicated that the right of removal may only be exercised one time. Thus, even if Johnson were somehow able to blunt the import of *Johnson* and *Veney*, sufficient authority would still exist to protect the principle that in capital cases, there is only one automatic right of removal.

■ Johnson's other contention, namely, that a sentencing proceeding is a new trial, is without merit. A sentencing proceeding is a fractional, bifurcated part, or "phase," of a single trial. *See Tichnell v. State*, 290 Md. 43, 59, 427 A.2d 991, 999 (1981). There is no additional right of removal when this phase commences, if the right has been once exercised. *Cf. Johnson, supra*, 258 Md. at 600–01, 267 A.2d at 154 (only one absolute right of removal per capital trial).

■ It follows that Judge Close was correct in his ruling on this motion.

## IV & VI

Next Johnson asserts the allowance by the trial judge of the State's theory that he was a principal in the first degree was error because:

(a) the State alleged and proved that Dwayne Mayers was a principal in the first degree during his trial in the Circuit Court for Anne Arundel County, and

(b) the evidence was insufficient to show that he was a principal in the first degree.

We reject both contentions.

### (a)

Johnson claims that at Mayers' trial, the State presented evidence that only Mayers killed the victim and that Mayers was the sole principal in the first degree. Johnson contends that this tactic should preclude the State from now pursuing a first degree murder charge against him.

■ After reviewing the record, we fail to see any basis for Johnson's characterization of the State's case against Dwayne Mayers. During the latter's trial, the State informed the Mayers' jury on several occasions, including opening and closing argument, that Mayers acted jointly with Johnson in perpetrating the Rosenblatt murder. While more focus was placed upon Mayers and his particular involvement in the crime, the State's presentation only demonstrated that it was Mayers who was being tried at that time. The proof, rather than indicating duplicity on the part of the State, merely reflected the realities of a trial where there is only one defendant, but many actors in the alleged criminal incident.

It must also be remembered that it was Johnson who proposed a severance for the trial after being jointly indicted with Mayers for the first degree murder of Esther Rosenblatt. Only spurious legal reasoning would permit

Johnson to escape being tried as a first degree principal when his request for a separate trial was granted.

(b)

Johnson further argues that the evidence was insufficient to show that he was a principal in the first degree; that is, that he was the actual perpetrator of the offense. At most, Johnson suggests that the evidence only justified a finding that he was a principal in the second degree.

In Maryland, one must be a principal in the first degree to first degree murder to be eligible for the death sentence. Md.Code, Art. 27, § 413(e)(1) (1957, 1982 Repl. Vol., 1984 Cum.Supp.). A principal in the first degree is "one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent." *State v. Ward,* 284 Md. 189, 197, 396 A.2d 1041, 1046 (1978); *see also, Tichnell v. State,* 297 Md. 432, 444 n. 5, 468 A.2d 1, 7 n. 5 (1983). One who aided, counseled, commanded or encouraged the commission of the crime in his presence, is a principal in the second degree. *Ward, supra,* 284 Md. at 197, 396 A.2d at 1046. A statutory exception to the perpetrator requirement is the provision that one who employs another to kill is also a first degree principal. *See* Art. 27, § 413(e)(1); § 413(d)(7).

Since we are reviewing the sufficiency of the evidence to support a criminal conviction, the standard we apply is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979). As the Court observed in *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830, 842 (1980):

> "This standard does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [*Jackson* 443 at 318–19, 99 S.Ct. at 2788–89] (emphasis in original). Instead, the standard to apply is 'whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [*Jackson* at 319, 99 S.Ct. at 2789] (emphasis in original)." *See also Stebbing v. State, supra,* 299 Md. at 361–62, 473 A.2d at 918.

██ An examination of the record demonstrates that "any rational trier of fact" could have concluded that Johnson was a principal in the first degree beyond a reasonable doubt, as the jury did here. Without setting forth all of the evidence pertinent to this issue, it is adequate to note that Johnson's confession, coupled with the physical evidence, was sufficient to indicate that Johnson was a joint perpetrator of the crime. Mayers' confession, which gave a different version of the crime and suggested that Mayers alone killed the victim, was before the jury and considered by them together with all remaining evidence. The jury quite properly was entitled to draw such inferences as it chose from the evidence; obviously it chose to conclude both Johnson and Mayers together killed Miss Rosenblatt. Accordingly, we find no merit to this argument.

## V

Johnson argues that it was error for the trial court to instruct his jury on joint first degree principals.[6] He contends that because Mayers claimed sole responsibility in his confession for killing Miss Rosenblatt, the issue of whether

---

**6.** The challenged instruction consisted of the following:

"In determining the sentence in this case, you shall first consider whether, beyond a reasonable doubt, the State has proven that the defendant was a principal in the first degree.

A principal in the first degree is the immediate perpetrator of the crime, while a principal in the second degree is one who did not commit the crime with his own hands, but was present aiding and abetting the immediate perpetrator. Under Maryland law, only a principal in the first degree may be sentenced to death.

You are further instructed that if you find from the evidence that two people inflicted the fatal injury, you may find that they are joint principals in the first degree."

Johnson also participated in the murder should never have been in the case.

A party is generally entitled to have his theory of the case presented to the jury through a requested instruction if that theory is a correct exposition of the law and there is evidence in the case which supports it. *Smith v. State*, 302 Md. 175, 179, 486 A.2d 196, 198 (1985); *Sergeant Co. v. Pickett*, 285 Md. 186, 194, 401 A.2d 651, 655 (1979); *Levine v. Rendler*, 272 Md. 1, 13, 320 A.2d 258, 265 (1974). The test for whether an instruction was proper has two aspects: (1) whether the instruction correctly states the law, and (2) whether the law is applicable in light of the evidence before the jury. *Sergeant Co., supra*, 285 Md. at 194, 401 A.2d at 655. If the test is met, the instruction *must* be given. *Smith, supra*, 302 Md. at 179–80, 486 A.2d at 198.

The challenged instruction given by Judge Close satisfies the quoted test. As already observed in section VI, *supra*, a principal in the first degree is the immediate perpetrator of the crime, with a single exception pertaining to contract murder situations. *See Ward, supra*, 284 Md. at 197, 366 A.2d at 1046. A principal in the second degree aids and abets the commission of the crime, but does not actually commit the crime with his own hands. *Id.* Only principals in the first degree are liable for the death penalty. Md.Code, Art. 27, § 413(e)(1) (1957, 1982 Repl.Vol., 1984 Cum.Supp.). Thus, Judge Close's instruction correctly expounded these legal principles.

The instruction also satisfies part two of the test since it was warranted by the evidence before the jury in the second sentencing proceeding. Johnson's confession, coupled with the *modus operandi* of the crime, was at the time of the instruction properly before the jury and was sufficient to generate the disputed instruction. While it is true that Mayers' confession, if believed by the jury, could have served as a basis for a potential jury finding of no joint perpetration of the murder, this evidence does not in any

way affect the validity of the given instruction where that instruction is supported by appropriate evidence.

### VII

Johnson's written confession to the Rosenblatt murder was admitted into evidence at the second sentencing proceeding. The confession contained the following question and answer:

"Question: Are you willing to take a polygraph test in reference to this case?

Answer: Yes."

An objection was made to the reference to a polygraph test at the sentencing proceeding and overruled by the court.

Johnson now claims that reference to the lie detector test should have been deleted.

There is no longer any doubt that in this State, the results of a lie detector test, as well as the fact of taking such a test, are inadmissible at trial. *Guesfeird v. State,* 300 Md. 653, 658–59, 480 A.2d 800, 803 (1984) (and cases cited therein). However, once the evidence is admitted, the critical question for this Court to resolve is whether the reference constitutes reversible error. We decide this issue by determining whether the result of the test could be inferred from the circumstances in which the reference was made or whether the reference to the test was prejudicial to the defendant. *Id.* at 659, 480 A.2d at 803. As we observed in *Guesfeird,* not all references to lie detector tests warrant reversal. *Id.* citing *Poole v. State,* 295 Md. 167, 182–84, 453 A.2d 1218, 1227 (1983); *Lusby v. State,* 217 Md. 191, 195, 141 A.2d 893, 895 (1958).

We do not believe that the reference to the test by Johnson in his confession requires reversal. Johnson readily acknowledged in the same document that his statement was freely given and was not the product of any threats or coercion. The confession was highly incriminating and obviously against Johnson's penal interest. The account was consistent with previous testimony and evidence.

With this evidence before it, the jury could well have reached the conclusion, long before reference to the polygraph test, that Johnson's confession was true. The inference from Johnson's statement of willingness to submit to a lie detector test would have yielded, at most, the same result. Thus the reference, standing alone, could not be said to have communicated the results of the test.

Similarly, we do not feel that Johnson was prejudiced by the reference to the test. Johnson gave a detailed and damaging account of his role in a violent murder. If the defendant was prejudiced in any way by the admission of the statement into evidence, it would only have arisen from his preceding confession and not from the concluding reference to a polygraph test.

It is apparent that the factual situation of the case before us is far different from the one present in *Guesfeird, supra.* In the latter case, a reference to having taken a polygraph test was made by the sole witness for the prosecution. Her uncorroborated testimony conflicted directly with the testimony of all the other witnesses, including the defendant. Credibility was the crucial issue for the jury. The unavoidable inference was that the witness passed the test, told the truth, and that the prosecution initiated the action on this basis. We reasoned that in light of these facts, the jury could well have decided against the defendant solely on the basis of the reference. The prejudice to Guesfeird was clear. *Id.* 300 Md. at 666–67, 480 A.2d at 807.

■■ Here, the objectionable reference was admitted at a sentencing proceeding where the guilt of the defendant was already established. Credibility of Johnson, if it was even in issue, was already established by the content of the confession. The only question left for the jury to decide was the appropriate sentence for Johnson. While better practice would be to delete all reference to polygraph tests, by whomever and whenever made, the admitted reference in this case does not warrant reversal.

## VIII

Johnson alleges in his next argument that the trial court erred in restricting the testimony of forensic psychiatrist Blumberg. It was proffered that Dr. Blumberg would testify that on January 9, 1979, Johnson was under the substantial influence of Mayers. The court declined this proffer of the expert's opinion after concluding that a psychiatrist could not precisely reconstruct the actions or emotions of a person on a specific date.

Judge Close did, however, allow Dr. Blumberg to render a complete description of the Johnson-Mayers relationship as it existed over a period of time. Testimony was elicited that Johnson passively followed Mayers on many occasions and that Mayers manipulated Johnson in many ways.

We have often said that control over expert testimony is largely left to the domain of the trial judge. A trial court is given broad discretion to admit or limit expert testimony, and its decision in this regard will seldom constitute grounds for reversal. *Stebbing, supra,* 299 Md. at 350, 473 A.2d at 912.

The court did not abuse its discretion in this case. Judge Close fairly limited what he felt was improper expert testimony and permitted the remainder. The testimony admitted, if believed, was sufficient for a jury to conclude that Mayers' domination constituted a mitigating factor. The jury's failure to so find does not prove reversible error.

## IX

Dr. Blumberg was asked on re-cross examination whether he was certain that the defendant would not escape or be paroled from an institution, presumably the one to which he would be assigned if given a life sentence. The question was met with immediate objection and motion for mistrial by defense counsel. The court denied the motion but issued a curative instruction admonishing the jury to not consider escape or parole in their deliberations. Johnson claims that the denial of his motion was reversible error.

 In deciding this issue, we are mindful of several considerations. First, a trial court is given broad discretion to determine whether or. not to grant a motion for a mistrial. *Poole, supra,* 295 Md. at 183, 453 A.2d at 1227, quoting *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707, 723 (1974). A court's decision is reviewable on appeal to determine if there has been an abuse of discretion; however, that decision will not be reversed unless it is clear that there has been prejudice to the defendant. *Id.*

 Second, where a prosecutor's remarks on parole or escape are improper and have warranted the granting of a mistrial, *Shoemaker v. State,* 228 Md. 462, 468–69, 180 A.2d 682, 685 (1965), this relief is not always required.[7] In such situations, the Court carefully considers the context in which the remarks are made and the action taken by the trial judge in response to the offensive statement. *Id.*

 Finally, we have long held that control over the extent and scope of cross-examination of witnesses is normally best left to the discretion of the trial judge. *Vitek v. State,* 295 Md. 35, 40, 453 A.2d 514, 516 (1982). A court's determination in this area will not be overturned unless there is a clear abuse of discretion. *Id.*

 With these principles before us, we do not believe that the lower court's response to the defendant's motion for a mistrial should be disturbed. Judge Close carefully considered the context in which the question was asked, weighed its potential impact on the jury, and determined that a curative instruction was sufficient to continue a fair sentencing proceeding. Since there is no evidence to suggest that the defendant was prejudiced in any way by the

---

7. In fact, the Supreme Court has recently upheld the use of the so-called "Briggs Instruction"—an instruction which specifically informs a sentencing jury of the possibility of parole or sentence commutation by the governor. *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).

reference to escape or parole, the defendant's motion was properly denied.[8]

## X

Prior to the court's instructions to the jury, Johnson requested an instruction compelling the jury to find that the life sentence Mayers received for his role in the Rosenblatt murder was a mitigating factor under Article 27, § 413(g)(8). This request was denied by Judge Close, and although the jury was made aware of Mayers' sentence by the evidence before it and both counsels' closing arguments, it did not find the life sentence as a mitigating factor, which it might have done under § 413(g)(8).

As observed earlier, a trial court is ordinarily obligated to give a party's requested jury instruction. *Smith v. State, supra,* 302 Md. at 179–80, 486 A.2d at 198. Before submitting to the request, however, the court must insure that the proposed instruction is a correct exposition of the law, and is warranted by the evidence adduced at trial. *Sergeant Co. v. Pickett, supra,* 285 Md. at 194, 401 A.2d at 655.

An instruction which *requires* a jury to find "sentence of codefendant" as a mitigating factor under Art. 27, § 413(g)(8), is not a correct exposition of the law. Section 413(g)(8) is a catch-all provision which broadly allows a sentencer to consider "any other facts which it finds as mitigating circumstances in this case." Md.Code (1957, 1984 Cum.Supp.), Art. 27, § 413(g)(8). The purpose of the

---

8. We are also cognizant of the fact that the challenged reference occurred after the witness, led by defense counsel, hypothesized on the defendant's future dangerousness "if committed or confined for the rest of his life." One court has held that a prosecutor may rebut similar testimony by commenting that a defendant sentenced to life may not serve life where the defendant opens the door to the issue on direct examination. *Davis v. State,* 241 Ga. 376, 384, 247 S.E.2d 45, 51, *cert. denied,* 439 U.S. 947, 99 S.Ct. 341, 58 L.Ed.2d 338 (1978). As the resolution of this issue is not necessary for the disposition of this argument, we leave the consideration of this issue for another day.

section was to expand the discretion of the sentencer beyond the carefully specified mitigating factors formerly enumerated by the legislature.[9] *Tichnell, supra,* 287 Md. at 734, 415 A.2d at 850. Of this intent the legislative branch left little doubt: it explicitly stated, in the purpose clause of the statute which added subsection (8) to then existing section 413, and in subsection (g)(8) itself, that a jury may consider any other unspecified factors that *it* finds relevant. Laws of Maryland 1979, Ch. 521 (emphasis supplied). Not surprisingly, sentencers have utilized this subsection to declare as mitigating a great range of factors. *See, e.g., Thomas v. State,* 301 Md. 294, 483 A.2d 6 (1984) (demographic characteristics and background of the defendant); *Calhoun v. State,* 297 Md. 563, 468 A.2d 45 (1983) (defendant's background); *Tichnell v. State,* 297 Md. 432, 471, 468 A.2d 1, 21 (1983) (referring to Curtis Monroe) (defendant was employed, had a wife and two children, was attempting to further his education, and that his crime was no greater than that committed by other individuals who did not receive the death penalty).

Johnson's proposed instruction, mandating that the jury find, as a matter of law, a mitigating factor under § 413(g)(8), would obliterate the jury's discretion under the provision and jettison the clear legislative intent favoring the sentencer's judgment in such matters. Judge Close properly denied the instruction of *mandatory* finding.

Our holding on this issue is fully consistent with the result reached by the Court in *Johnson, supra,* 292 Md. at 436–41, 439 A.2d at 560–62. In that case, a jury failed to find as a mitigating circumstance the defendant's lack of a prior criminal record. This circumstance is one of the legislatively denominated mitigating factors. Art. 27, § 413(g)(1). Because the evidence of this fact was uncontroverted, and its existence conceded by both sides, we held

---

**9.** Previous to the legislative amendment adding new subsection 413(g)(8), § 413(g) contained only the first seven factors currently found in that section.

that the jury was required to make this finding as a matter of law. *Id.* (emphasis supplied). *See also, Bowers, supra,* 298 Md. at 151, 468 A.2d at 120–21 (jury required to find as mitigating factor that defendant had not previously been convicted of a crime of violence). Our concern in *Johnson* was that without this strict requirement compelling the finding, the inference could arise that the sentencer had altogether neglected to consider the legislatively mandated factor. *Id.* 292 Md. at 440, 439 A.2d at 562.

*Johnson* is simply not applicable to the situation before us. Unlike *Johnson,* there is no legislative requirement that a sentencer consider a codefendant's sentence. A jury is given broad discretion under § 413(g)(8), and the jury was free to either conclude that Mayers' sentence was a mitigating factor or disregard it entirely.

Moreover, there is no danger in this case that the jury failed to consider the factor in its deliberations. During deliberation, the jury sent to Judge Close a note asking the court whether Mayers' conviction could be considered a mitigating circumstance under § 413(g)(8). The court responded in the affirmative, and the jury reached its own conclusion that Mayers' sentence was not a mitigating factor in Johnson's sentencing.

## XI

We turn now to Johnson's argument that the trial court was bound to instruct the sentencing jury that it had to find, as a matter of law, those mitigating factors previously found to exist by other sentencing bodies.

Specifically, in Johnson's trial for the murder of Betty Toulson, the sentencing judge found that three mitigating factors were present: (1) that Johnson acted under the substantial domination and/or provocation of Mayers; (2) that the murder was committed while the capacity of Johnson to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law was substantially impaired as a result of mental disorder; and

(3) that Johnson was of youthful age at the time of the crime.[10] In the first sentencing proceeding in the present case, the jury found as a mitigating factor the life sentence of Johnson's codefendant.

The second sentencing jury in this case only found as a mitigating factor that the act of the defendant was not the sole proximate cause of the victim's death. The gravamen of Johnson's argument is that the double jeopardy clause of the Fifth Amendment to the United States Constitution, and the principle of collateral estoppel, required the same findings of mitigating factors by the second sentencing jury as was made by the first two sentencers.

We disagree. The double jeopardy bar of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prevents a person from twice being put in peril of life or limb "for the same offence." U.S. Const. amend V. The jeopardy clause constitutionally protects against three separate government encroachments: (1) it prevents a second prosecution of the defendant for the same offense after acquittal; (2) it prohibits a second prosecution for the same offense after conviction; and (3) it disallows multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). Before the doctrine attaches, however, there must in the first instance be a threat of multiple prosecutions or punishments *for the same offense. Id.*

The findings of the jury in the Toulson case related to a different offense. Thus, the doctrine of double jeopardy is not even implicated, and Johnson's argument regarding the Toulson findings must fail.

The jeopardy clause also fails to provide appellant any support regarding the jury findings in his first sentencing proceeding. The sentence in that proceeding was set

---

10. The Toulson murder occurred after the Rosenblatt homicide.

aside, and a new proceeding ordered, upon Johnson's motion for this specific relief.

We have previously held, in a variety of contexts, that the State is not precluded by the jeopardy clause from reinstituting criminal proceedings against a defendant when it is the accused himself who has secured the intervening relief. For example, we have permitted reprosecution of a defendant where the defendant has obtained reversal on direct appeal, *Huffington v. State,* 302 Md. 184, 189, 486 A.2d 200, 203 (1985), citing *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), or through post conviction application, *Ward v. State,* 290 Md. 76, 94–95, 427 A.2d 1008, 1018 (1981). We have also allowed the state to commence a new trial against the defendant where that person sought or consented to a mistrial, *Booth v. State,* 301 Md. 1, 4, 481 A.2d 505, 506 (1984); *Ward, supra,* 290 Md. at 94–95, 427 A.2d at 1018. The reasoning behind these maxims is that the defendant should not benefit from the prohibition where he has succeeded in "wiping the slate clean." *State v. Moulden,* 292 Md. 666, 675, 441 A.2d 699, 704 (1982), quoting *Parks v. State,* 287 Md. 11, 16, 410 A.2d 597, 601 (1980). Where the record is thus expunged, a subsequent proceeding "may start anew." *Id.*

The same rationale permits a new sentencing proceeding under the double jeopardy clause where the sentence in the initial proceeding is set aside at the defendant's behest. Since the "slate was wiped clean," any jury findings in the first proceeding have no applicability to the second proceeding, where a new jury is to set sentence based on the statutory scheme. See Md.Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27, § 413.

The principle of collateral estoppel is also unavailable to Johnson. This legal safeguard protects an accused in a criminal case from having to relitigate an issue which has once been determined in his favor by a prior judgment. *In re Bennett,* 301 Md. 517, 525, 483 A.2d at 1242, 1246 (1984); *Powers v. State,* 285 Md. 269, 283–84, 401

A.2d 1031, 1039, *cert. denied*, 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979). Before claiming the benefit of the doctrine, the party employing collateral estoppel must demonstrate that the issue of ultimate fact which has been decided in the previous case is the same as the issue in the instant proceeding. *Bennett, supra*, 301 Md. at 525, 483 A.2d at 1246.

With these caveats of estoppel law in mind, it is apparent that the principle provides no basis for Johnson's argument for mandatory findings. The issues decided by the sentencer in the Toulson trial were not the same as the issues at the Rosenblatt proceeding. Thus, the requirement of identity of issue is not satisfied. As to Johnson's first sentencing proceeding in this case, as previously explained, he sought relief and was successful in having the sentence set aside with a new sentencing proceeding order. Thus there was no judgment as required. Accordingly, we perceive no merit to this contention.

It follows that the trial court was correct in its ruling on this argument.

## XII

Johnson next claims that the court should have instructed the jury that his youthful age was a mitigating factor as a matter of law. Johnson was 17 years, 10 months old at the time he perpetrated the Rosenblatt murder. It is his contention that the legislature, in enacting the mitigating factor of youthful age, intended to require juries to make this finding whenever the defendant is under 18 years of age.

We have previously disposed of Johnson's contention that the mitigating factor of youthful age is measured by a chronological standard. *Stebbing, supra*, 299 Md. at 367–69, 473 A.2d at 921–22. *Cf. Trimble v. State*, 300 Md. 387, 416–429, 478 A.2d 1143, 1158–64 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985) (no chronological requirement for imposition of death penalty). We

reaffirmed this holding in *White v. State,* 300 Md. 719, 738–39, 481 A.2d 201, 210–11 (1984), by declaring that "prior criminal conduct, home environment, marital status, degree of maturity, and alcohol and drug abuse, among others," are all factors relevant to the concept of "youthful age."

Our consideration of this issue is therefore limited to whether *"any* rational sentencing authority could have concluded that the accused failed to prove the claimed mitigating circumstance by a preponderance of the evidence." *Stebbing, supra,* 299 Md. at 362, 473 A.2d at 918 (emphasis in original), quoting *Jackson v. Virginia, supra,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 (1979).

In the instant case, the jury had before it Johnson's prior record of criminal conduct (including a prior murder conviction) and ample evidence of his degree of maturity, home environment and mental and emotional profiles. The jury could rationally have concluded that Johnson's age was not sufficiently youthful so as to constitute a mitigating factor. We find no error in this conclusion.

## XIII & XIV

Johnson disputes in these sections the exclusion of certain evidence during the second sentencing proceeding. In XIII, Johnson claims that the court should have admitted the entire jury findings and sentencing determination made in the Mayers case. The jury failed to find as a mitigating factor in Mayers' case that "the act of the defendant was not the sole proximate cause of the victim's death." *See* Art. 27, § 413(g)(6) (Md. Code, 1957, 1982 Repl.Vol., 1984 Cum.Supp.). According to Johnson, this finding establishes that Mayers was the sole cause of Miss Rosenblatt's death; it should have been admitted into evidence to prove, as a mitigating factor for himself, that he (Johnson) was not the sole proximate cause of the victim's death.

In XIV, Johnson contends that the court should have admitted the findings and determinations made by the sen-

tencing judge in his Toulson murder trial.[11] Judge Close only permitted evidence of Johnson's ultimate conviction and sentence for the Toulson murder in the second Rosenblatt sentencing proceeding.

Maryland Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.), Article 27, § 413(c)(1), governs the admission of evidence in sentencing proceedings of death penalty cases. That section provides:

"(1) The following type of evidence is admissible in this proceeding:

---

11. Judge Clark, sentencing judge in the Toulson case, made the following findings with respect to the evidence:
"D. *Aggravating circumstances raised by the evidence:*
 1. That the victim was a hostage in the course of a kidnapping;
 2. That the victim was killed in the course of the commission of a rape.
*Mitigating circumstances raised by the evidence:*
 1. The Defendant previously has not been found guilty of a crime of violence and has not entered a plea of guilty or nolo contendere to a crime of violence and has not been granted a stay of judgment pursuant to a crime of violence.
 2. The Defendant acted under substantial duress, domination, or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.
 3. The murder was committed while the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder, emotional disturbance, or intoxication.
 4. The youthful age of the Defendant at the time of the crime.
 5. That a co-defendant, Dwayne Mayers, who substantially dominated the Defendant, was the person who originated this crime, was sentenced to life in prison.
 6. That Dwayne Mayers, who has confessed to the commission of the homicides referred to in Section I.M. of this report was sentenced to life in prison in one case (Rosenblatt case) and the charges pending against him in the other case (Turner case) were entered as nolle prosequi by the State of Maryland.
E. *Aggravating and Mitigating Circumstances upon which the Jury was Instructed:*
 Not applicable. Defendant requested a court trial.
F. *Sentence imposed:*
 Life Imprisonment."

(i) Evidence relating to any mitigating circumstance listed in subsection (g) of this section;

(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of this section of which the State had notified the defendant pursuant to § 412(b) of this article;

(iii) Evidence of any prior criminal convictions, pleas of guilty or nolo contendere, or the absence of such prior convictions or pleas, to the same extent admissible in other sentencing procedures;

(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

(v) Any other evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements."

In determining the admissibility of evidence under § 413(c)(1), the five provisions of the section are read together so as to effectuate the legislative purpose of delineating and circumscribing the type of evidence admissible in this proceeding. *Scott v. State,* 297 Md. 235, 245–46, 465 A.2d 1126, 1132 (1983). Collectively, these provisions are somewhat more restrictive as to the admissibility of evidence at the sentencing proceedings of death penalty cases than is normally the case in a sentencing proceeding in a nondeath penalty case. *Id.* at 246, 465 A.2d at 1132.

We turn first to Johnson's contention that he was entitled to the findings in the Mayers case to prove the existence of a mitigating factor. Although he does not cite the statutory basis for this claim, we assume for purposes of this argument that his objection is based upon § 413(c)(1)(i). That section allows "evidence relating to any mitigating circumstance listed in subsection (g) of this section." [12]

---

**12.** Art. 27, § 413(g) provides in its entirety:

The general rule regarding evidence propounded by a defendant to prove a mitigating factor at the sentencing phase of a capital proceeding was outlined by the Supreme Court in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In *Lockett*, Chief Justice Burger wrote for a plurality of the Court that given the unique sanction in a death penalty case,

> "the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character of record and any of the circumstances of the offense

"(g) *Consideration of mitigating circumstances.*—If the court or jury finds, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist:

(1) The defendant has not previously (i) been found guilty of a crime of violence; (ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or (iii) had a judgment of probation on stay of entry of judgment entered on a charge of a crime of violence. As used in this paragraph, 'crime of violence' means abduction, arson, escape, kidnapping, manslaughter, except involuntary manslaughter, mayhem, murder, robbery, or rape or sexual offense in the first or second degree, or an attempt to commit any of these offenses, or the use of a handgun in the commission of a felony or another crime of violence.

(2) The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

(3) The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

(4) The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

(5) The youthful age of the defendant at the time of the crime.

(6) The act of the defendant was not the sole proximate cause of the victim's death.

(7) It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

(8) Any other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case."

that the defendant proffers as a basis for a sentence less than death." (emphasis in original).

*Id.* at 605, 98 S.Ct. at 2964–65, 57 L.Ed.2d at 990. This standard was later reaffirmed by the Court in *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1, 8 (1982).

That the general rule was not a talisman for the automatic admission of evidence when proffered by a defendant was made clear by the Court. The Court carefully noted in *Lockett* that "nothing in this opinion limits the traditional authority of a court to exclude, as *irrelevant,* evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." (emphasis supplied). 438 U.S. at 605 n. 12, 98 S.Ct. at 2965 n. 12, 57 L.Ed.2d 990 at n. 12. In *Eddings,* the Court observed that a proper death penalty statute confines and directs the jury's attention "to the circumstances of the particular crime and to 'the characteristics of the person who committed the crime.'" 455 U.S. at 111, 102 S.Ct. at 875, 71 L.Ed.2d at 9, quoting *Gregg v. Georgia,* 428 U.S. 153, 197, 96 S.Ct. 2909, 2936, 49 L.Ed.2d 859, 888 (1976).

▮▮▮▮ Thus, while evidence proposed by a defendant under § 413(c)(1)(i) should be generously viewed by a trial judge, to be admissible the proffered evidence must meet a threshold test of relevancy. Relevant evidence, it has frequently been said, is evidence which tends to establish or disprove a material proposition. *Ross v. State,* 276 Md. 664, 672, 350 A.2d 680, 686 (1976). Evidence which is not probative of the proposition at which it is directed is deemed "irrelevant." *Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665, 669 (1976). Because the rule of relevance is not subject to precise definition, the determination of relevance, like other similar questions of admissibility of evidence, rests with the discretion of the trial judge. *Durkin v. State,* 284 Md. 445, 453, 397 A.2d 600, 605 (1979). The determination will not be overturned on appeal absent a clear abuse of discretion. *Id.*

 Once the relevancy of the evidence has been established, the trial court must still ensure that the evidence relates to the circumstances of the particular crime and to the characteristics of this defendant. *Eddings, supra,* 455 U.S. at 111 and n. 6, 102 S.Ct. at 875 and n. 6, 71 L.Ed.2d at 9 and n. 6.

 With these principles before us, it is difficult to envision a situation where the prior findings of mitigating or aggravating circumstances in an unrelated sentencing proceeding will ever be admissible to the future sentencing proceeding, even where the defendant is trying to establish a mitigating circumstance under § 413(c)(1)(i). This would be especially true where the defendant seeks to introduce the findings from the proceeding of another individual, as Johnson attempted with the Mayers findings. The mitigating factors listed in § 413(g) are defendant specific: the statute directs the jury to determine whether *this* particular defendant qualifies for any of several enumerated mitigation factors. The findings regarding another person do not in any way tend to establish a material fact beneficial to an entirely different individual. *Accord, Eddings, supra,* 455 U.S. at 111 and n. 6, 102 S.Ct. at 875 and n. 6, 71 L.Ed.2d at 9 and n. 6.

Moreover, a determination that a different defendant established a particular mitigating factor is necessarily based on a myriad of evidence submitted by that defendant to the sentencing body. The findings would be irrelevant to a different sentencing body where that body cannot have the benefit of all the evidence before the other sentencer.

 Finally, the exact reason why Johnson pursued Argument XIII is not clear. The jury found as a mitigating factor, and in spite of the exclusion of the contested evidence, that Johnson was not the sole proximate cause of death. It is a fundamental rule of appellate procedure that a reviewing court will not reverse upon rulings on evidence where the ruling did not result in prejudice to the complain-

ing party. *Tully v. Dasher,* 250 Md. 424, 436, 244 A.2d 207, 214 (1968).

We next turn to the issue raised in XIV: whether the trial court erred in excluding the findings made by the sentencer in the Toulson murder case. Since Johnson again does not enlighten us as to his belief of admissibility, we will consider the possible grounds for such evidence under § 413(c)(1) *seriatim.*

■■■ The evidence is not admissible under § 413(c)(1)(i). As we observed earlier, the past findings of a sentencer in an unrelated case will rarely be relevant or admissible in future death penalty proceedings, even where the defendant seeks to establish mitigating factors listed in § 413(g). For just as the factors in (g) are defendant specific, so are they, for the most part, *incident* specific.

A perusal of the factors illustrates this last point. Section 413(g)(2), (3), (4), (5) and (6) all explicitly refer to the conduct of the defendant upon which the specific prosecution is based. Section 413(g)(1), through § 413(c)(1)(i), explicitly permits evidence of past convictions of violent crime, and is not here applicable. Subsections (g)(7) and (g)(8) do not provide a basis for Johnson's claim, either. Any findings made by a sentencer in a different murder case are therefore irrelevant to a second sentencer attempting to determine the mitigating circumstances in a later proceeding.

■■■ The view that the evidence be incident specific is consistent with the view that a sentencer consider the character and record of the individual offender and the circumstances of the particular offense before inflicting the death penalty. *See Eddings, supra,* 455 U.S. at 111 and n. 6, 102 S.Ct. at 875 and n. 6, 71 L.Ed.2d at 9 and n. 6; *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944, 961 (1976).

Additionally, the Toulson murder occurred after the Rosenblatt murder. The value of the findings concerning subsequent conduct of the defendant is of even less rele-

vance than usual. *See* Wharton's Criminal Evidence (13th Ed.), § 209, p. 439.

The remaining provisions of § 413(c)(1) do not provide any basis for the admission of past sentencing findings. Section 413(c)(1)(ii) refers to aggravating circumstances; presumably, Johnson would not care to prove any of these factors listed in § 413(d). Provisions (iii) and (iv) of § 413(c)(1) restrict the evidence admissible under their authority to proof of prior criminal convictions and any presentence investigation report. Section 413(c)(1)(v) refers to evidence admitted through the discretion of the court in response to State's evidence. It is not here applicable.

It follows that Judge Close's rulings on this evidence will not be disturbed.

## XV

Johnson here contends that the trial court erred in permitting testimony of his future dangerousness because this mitigating circumstance was not first put in issue by the defendant in the sentencing proceeding.

We considered and rejected a similar contention in *White, supra*, 300 Md. at 739–40, 481 A.2d at 211. We there noted that the mitigating circumstance of future dangerousness, along with all other mitigating circumstances, is in issue at the inception of the proceeding since the jury is bound to consider all statutorily prescribed factors. *Id.* at 740, 481 A.2d at 211. We specifically stated:

"It is not necessary for one convicted of capital murder first to introduce evidence, or to argue, in support of finding this mitigating circumstance before the State may properly introduce evidence opposing such a finding. The issue is injected into the sentencing phase from its beginning because the special verdict at the guilt phase found an aggravating factor, and § 413(g) mandates that the jury consider each of the statutorily enumerated possible mitigating circumstances. MD.R.772A implements this mandate by specifying the form to be utilized by the

sentencing authority and that form presented the subject mitigating circumstance for consideration. To say that the subject possible mitigating circumstance is not an issue in the sentencing phase unless the convicted capital murderer invokes it would lead to the absurd consequence that, absent affirmative evidence or argument from the defendant, the court could instruct a sentencing jury that it could not find this mitigating factor to apply."

Accordingly, this contention is without merit.

## XVI

■ Johnson next assigns as error the admission of certain testimony concerning the victim's personal life and history. During the guilt or innocence phase of Johnson's trial, the victim's brother testified, among other things, to certain physical qualities of his sister; that she had never married; and that she had had several proposals of marriage. There was no objection to this testimony.

At the sentencing proceeding, Johnson stipulated that if the brother were to testify, his testimony at the sentencing proceeding would consist of a transcript of his trial testimony. However, Johnson objected to that portion of the testimony concerning the above statements. The trial judge overruled this objection on the ground that there had been no objection made when the statements were first made; that is, at the guilt or innocence phase of the trial.

In our view, even assuming the trial judge erred, we do not find such error to require reversal.

Coincidentally, this same issue was raised by Johnson in the appeal from his conviction for the Betty Toulson murder. *Johnson v. State, supra,* 292 Md. at 430, 439 A.2d at 556. There, the trial judge had admitted testimony that the victim had a very sick daughter. We found no reversible error, stating:

"Assuming, solely arguendo, that this testimony was superfluous to the prosecution's case, a reversal of the underlying convictions is not justified if the evidentiary

violation constitutes harmless error. The standard for determining harmless error, as thoughtfully laid out by Judge O'Donnell for this Court in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976), is whether 'a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict. . . .' Upon such a review of the trial record in this case we have no difficulty in declaring beyond a reasonable doubt that the verdicts were not influenced by the testimony concerning the daughter's health. The record is glutted with overwhelming evidence in support of the jury's guilt determinations, including the defendant's prior voluntary confession to the crimes as well as his testimonial admissions at trial. A reversal on this basis is thus not warranted." *Id.*

What we said in *Johnson* is equally applicable here; the *Johnson* reasoning and holding are dispositive of this issue.

## XVII

Johnson contends that the trial court erred at the resentencing proceeding in admitting evidence of his prior convictions for the first degree murder of Betty Toulson and related offenses, without first determining whether those prior convictions were constitutionally defective. Johnson, citing *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), relies upon the Supreme Court's holding that a prior criminal conviction, which is constitutionally infirm because the defendant was unrepresented by counsel and did not effectively waive his right to counsel, cannot be used to enhance punishment or support guilt. Johnson claims that, at the trial in the *Toulson* case culminating in the prior convictions used in the present case, his counsel was ineffective. He contends that, for purposes of the rule of *United States v. Tucker*, inadequate counsel should be equated with lack of counsel.

In the *Toulson* case, Johnson was sentenced to death. On appeal, we affirmed the convictions but vacated the death sentence and remanded for a new sentencing proceeding.[13] Although Johnson had raised the issue of ineffective assistance of counsel in his appeal in *Toulson*, this Court did not reach it, concluding that the matter was best left to a post-conviction proceeding. 292 Md. at 434–435, 439 A.2d at 558–59.

The record shows that no post-conviction proceeding was ever filed, as suggested by the Court in *Johnson*. Moreover, there was no pre-trial motion filed in the present case in which Johnson attempted to challenge the validity of the prior convictions. Instead, Johnson argues that the trial court, during the sentencing proceeding in the instant case, should have heard evidence and ruled on whether the *Toulson* convictions were constitutionally invalid, on inadequacy of counsel grounds, before admitting evidence of the *Toulson* convictions.

In the line of cases relied upon by Johnson, the Supreme Court held that where the records of prior convictions showed, on their face, the absence of counsel and no valid waiver of the right to counsel, the convictions were presumptively invalid under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and could not be used to enhance punishment or support guilt. *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *United States v. Tucker, supra; Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The Supreme Court emphasized, however, that "the certified records ... *on their face* raise a presumption that petitioner was denied his right to counsel ... and therefore that his [prior] conviction was void." *Burgett v. Texas, supra*, 389 U.S. at 114, 88 S.Ct. at 261–62, 19 L.Ed.2d at 324. (Emphasis added.) The admission into evidence of such conviction was

---

**13.** A life sentence was imposed at the resentencing proceeding; no appeal was taken from this new judgment.

deemed "inherently prejudicial." *Id.* at 115, 88 S.Ct. at 262, 19 L.Ed.2d at 325.

The situation in the case at bar is quite different from that in the above-cited Supreme Court cases. The record of the *Toulson* convictions reflects that Johnson did indeed have counsel. Unlike the convictions in *Burgett, Loper* and *Tucker*, the convictions in *Toulson*, obtained while the defendant was represented by counsel, are presumptively valid. Furthermore, the defendant has not brought a post-conviction proceeding, as suggested in *Johnson*, or any other proceeding prior to the present trial, for the purpose of establishing the inadequacy of the representation in the *Toulson* case.

In light of the rationale of the Supreme Court's opinions, the Supreme Court's holding in the situation where a certified record of a conviction reflects that a defendant was without counsel would appear to be inapplicable to the situation where a defendant, having had the benefit of counsel, makes a mere allegation of inadequacy of counsel in order to attack a prior conviction. Nothing in the *Burgett, Tucker* and *Loper* opinions indicates that a trial court is obligated to interrupt the trial, and conduct a separate hearing, to determine the adequacy of counsel at a prior unrelated trial in order to rule upon the admissibility into evidence of the prior conviction.

In the only cases of which we are aware, where it was held that evidence of a prior conviction should not have been admitted because of ineffective assistance of counsel in connection with such prior conviction, the issue of counsel incompetency had already been adjudicated *prior* to the beginning of the trial in which the evidence of the prior conviction was sought to be introduced. *People v. Meyers,* 617 P.2d 808 (Colo.1980); *Ibn-Tamas v. United States,* 407

A.2d 626 (D.C.App.1979). There is nothing in either case supporting Johnson's position here.[14]

 Where a defendant was represented by counsel when he was previously convicted, unless the defendant before trial obtains an adjudication that counsel's representation at the time of the prior conviction was constitutionally inadequate, the prior conviction is prima facie valid, and the trial court is entitled to rely upon such validity. Therefore, the trial judge in this case properly admitted evidence of the *Toulson* convictions.

## XVIII

Without having the benefit of our opinion in *Trimble, supra,* filed one week after the filing of his brief herein, Johnson asserts that the imposition of the death penalty upon persons under the age of eighteen at the time of the

---

14. Johnson also relies upon *Brown v. United States,* 610 F.2d 672 (9th Cir.1980). *Brown* was a federal post-conviction action in which the petitioner was attacking his earlier federal criminal conviction on the ground that the trial judge, at the sentencing phase of the earlier federal trial, had admitted evidence of and relied upon prior state criminal convictions where petitioner's representation by counsel was allegedly inadequate. The United States Court of Appeals in *Brown* did not specifically hold that the trial judge, at the earlier federal criminal trial, should have adjudicated the question of attorney competency at the state court trials.

On the other hand, the *Brown* opinion does seem to indicate that the petitioner, in the post-conviction proceeding challenging the federal conviction, may have been entitled to obtain an adjudication of attorney competency in connection with the state court convictions, and if the post-conviction court determined that counsel was incompetent at the state court trials and that these convictions enhanced the federal sentence, it should grant relief with respect to the earlier federal conviction and sentence because of the erroneous admission of and reliance upon the state court convictions. While we need not reach the matter in this case, we do have serious reservations about this aspect of the *Brown* case. It seems to us that if prior convictions are prima facie valid and, therefore, properly admitted into evidence and relied upon at a criminal trial, a later post-conviction adjudication concerning the prior convictions does not retroactively render the admission into evidence at the criminal trial erroneous. "The correctness of a ruling on evidence is to be determined by the situation as presented to the court when the evidence was offered." *T. Barbour Brown & Co. v. Canty,* 115 Conn. 226, 161 A. 91 (1932). *See* 88 C.J.S. *Trial* § 83 at 190.

offense constitutes cruel and unusual punishment in viola-
tion of the Eighth Amendment to the United States Consti-
tution and Articles 16 and 25 of the Maryland Declaration
of Rights.

In *Trimble,* after considering the identical argument now
being made by Johnson, we concluded, after an exhaustive
review of pertinent Supreme Court cases, that:

> "The imposition of the death penalty in this instance
> measurably serves society's weighty interests in both
> retribution and deterrence ... nor is the capital sanction
> 'grossly out of proportion to the severity of the crime,'
> *id.,* in this case a brutal rape-murder. For Eighth
> Amendment purposes the punishment is therefore consti-
> tutionally permissible."

300 Md. at 428, 478 A.2d at 1164.

■■■ Similarly where, as in the instant case, a vicious
torture-murder is perpetrated upon a defenseless 78 year
old woman during the course of a daytime housebreaking
by an individual previously convicted of murder, we do not
believe the sentence to be out of proportion to the severity
of the incident. It is of further interest that Johnson was
two months older than Trimble when the offense was
committed. Accordingly we find, as we did in *Trimble,* that
for Eighth Amendment and Maryland Constitutional pur-
poses the punishment is permissible.

## XIX

■■■ Johnson next alleges that the death sentence im-
posed upon him is excessive and disproportionate to the
punishment imposed in similar cases. After considering the
crime, this defendant and the punishment given in other
cases, however, we come to a different conclusion. Accord-
ingly, we uphold the sentence.

The procedure for our review is mandated by Section 414
of Article 27, Maryland Code (1957, 1982 Repl.Vol.). The
purpose of this review, as recently described by the Court,

"is substantially to eliminate 'the possibility that a person will be sentenced to die by the action of an aberrant jury,' so that if the time comes 'when juries generally do not impose the death sentence in a certain kind of murder case,' this Court can vacate the death sentence." (Citation omitted).

*Trimble, supra,* 300 Md. at 429, 478 A.2d at 1164.

The "certain kind," or inventory, of murder cases which we examine to fulfill our responsibilities under the statute are those cases in which the State sought the death penalty, along with other similar cases appellant wishes to present.

Before commencing our analysis of the inventory, it is helpful to recall that in the instant case, the jury found one aggravating circumstance: that the murder was committed by Johnson while he was committing or attempting to commit robbery. The jury also found one mitigating circumstance: that Johnson's criminal act was not the sole proximate cause of the victim's death. In the panel's opinion, the mitigating factor did not outweigh the aggravating factor; accordingly, the death penalty was imposed.

We turn first to those cases to which we have been referred by appellant Johnson.

*Ronald Leroy Johnson:*

Johnson was sentenced to life imprisonment following a court sentencing proceeding for bludgeoning to death his great aunt during the course of an attempted robbery in her home. The sentencing judge found one aggravating circumstance: that the murder occurred during the attempted robbery. He also determined that three mitigating circumstances existed: the defendant had not previously been found guilty or charged with a crime of violence; Johnson had acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution; and the murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially im-

paired as a result of mental incapacity, mental disorder, emotional disturbance, or intoxication. The sentencing judge concluded that the mitigating circumstances outweighed the aggravating circumstance and sentenced the defendant to life imprisonment.

*Dwayne T. Mayers:*

Mayers, Johnson's co-defendant in the Rosenblatt murder, was tried separately in another jurisdiction and sentenced to life imprisonment. The jury found as the single aggravating circumstance that the murder was committed during robbery. It also found as mitigating circumstances that Mayers did not have any previous convictions for or charges of crimes of violence; that the murder was committed while his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder, emotional disturbance, or intoxication; and that he was of youthful age. (Mayers was somewhat older than Johnson.)

*Lawrence Johnson* (appellant in this case):

In this case, Johnson was convicted for the murder of Betty Toulson. He was initially sentenced to death; we vacated the sentence on appeal and remanded for a new sentencing proceeding. Upon remand Johnson elected to be sentenced by the court; a life sentence resulted. The trial judge found one aggravating circumstance: that Johnson committed the murder while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree. The trial judge also concluded that the following mitigating circumstances existed:

"(1) The defendant previously (i) has not been found guilty of a crime of violence; and (ii) has not entered a plea of guilty or nolo contendere to a charge of a crime of violence; and (iii) has not been granted probation on stay of entry of judgment pursuant to a charge or a crime of violence.

(2) The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

(3) The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder, emotional disturbance, or intoxication.

(4) The defendant was of youthful age at the time of the crime.

(5) Other mitigating circumstances, as set forth below: Actual perpetrator of the Rosenblatt murder together with this Defendant has received a sentence of life imprisonment for that offense, and the State has entered as nolle prosequi charges pending against him for Turner murder. The State relies heavily on Defendant's involvement in these two unrelated homicides to justify death in this case."

The State refers to the following cases.

*Eugene S. Colvin:*

This individual was sentenced to death following his first degree premeditated murder conviction which involved a murder occurring during a housebreaking. We affirmed the conviction and sentence. *Colvin v. State,* 299 Md. 88, 472 A.2d 953, *cert. denied,* —— U.S. ——, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). The sentencing jury in that case found as an aggravating circumstance that the homicide was perpetrated while committing or attempting to commit a robbery. No mitigating circumstances were found. Furthermore, Colvin was shown to have had a lengthy criminal record.

*Derrick Quentin White:*

White was convicted of murder during the course of attempted robbery and sentenced to death by a jury. White was 18 years old at the time of the offense. The jury found one aggravating circumstance: that the murder was com-

mitted while attempting to commit robbery. The jury also found two mitigating circumstances to have been proven by a preponderance of the evidence: (1) that the defendant previously had not been found guilty of a crime of violence, and (2) poor environment.

*Doris Ann Foster:*

Foster was convicted of robbery and murder and sentenced to death for the murder of her landlady whom she lured into her rental unit. We see no similarity of either the crime of the defendant Foster to Johnson or his crime, and therefore do not include the Foster case in the inventory for our review.

*James Russell Trimble* (age 18):

Trimble was convicted of murder occurring during a sexual assault and sentenced to death; we affirmed both the conviction and sentence. *See Trimble, supra.* In *Trimble,* two aggravating circumstances were found in the case: that the victim was a hostage taken or attempted to be taken in the course of a kidnapping; and that the defendant committed the murder while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree. The following mitigating circumstances were found by the sentencer:

"The defendant previously (i) has not been found guilty of a crime of violence; and (ii) has not entered a plea of guilty or nolo contendere to a charge or a crime of violence; and (iii) has not been granted probation or stay of entry of judgment pursuant to a charge or a crime of violence; the youthful age of the defendant at the time of the crime; other mitigating circumstances exist as set forth below: antisocial personality; substance abuse (by history)."

The trial judge concluded that the mitigating circumstances did not outweigh the aggravating circumstances and imposed the death penalty.

*Annette Louise Stebbing* (age 19):

Stebbing was convicted of murder and sentenced to death. The sentence was affirmed by this Court. The homicide was effected by means of strangulation of the victim while the defendant's husband was sexually molesting the victim. The defendant elected to be sentenced by a judge, who found one aggravating circumstance: that the murder was committed by the defendant while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree. One mitigating circumstance was found: the defendant previously (i) has not been found guilty of a crime of violence; and (ii) has not entered a plea of guilty or nolo contendere to the charge of a crime of violence; and (iii) has not been granted probation or stay of entry of judgment pursuant to a charge or a crime of violence.

We will add the following case to the inventory.

*Glen Sturgis* (age 30):

This defendant, along with another, broke into a home intending to burglarize it. While the defendant was inside, the victim returned home. The victim was kidnapped and ultimately shot by each of the intruders.

A jury found Sturgis guilty of murder and other offenses. The same jury was elected by the defendant for sentencing and, after they failed to agree on an appropriate sentence, a life sentence was imposed. *See* Md.Code, Art. 27, § 413(k)(2) (1957). There was evidence of two aggravating circumstances: the victim was taken as a hostage and the murder was committed during the course of a robbery. The trial judge also reported that there was evidence that the defendant was not the sole proximate cause of the victim's death, and that the defendant was of youthful age at the time of the crime. Additionally, he had cooperated with the police and assisted in locating the body.

An examination of the above cases persuades us that the sentence of death here is not the action of an "aberrant jury." *Trimble, supra,* 300 Md. at 429, 478 A.2d at 1164.

Of the eight cases considered in the inventory, four defendants received a life sentence, one of which was as a result of the jury not being able to agree on an appropriate sentence. The remaining defendants received the death penalty. A comparison of the aggravating and mitigating circumstances found indicates to us that in those cases where the sentence was life, generally the sentencing body found more mitigating circumstances than were found in the instant case. This was precisely the case in Mayers' sentencing proceeding, where the sentencing judge found three mitigating factors. At Johnson's proceeding, only one mitigating factor was deemed to exist. The finding of different factors justified the particular sentence in each case; it also convinces us that the sentence received by Johnson was not aberrant.

Consequently, having fulfilled our mandated proportionality review function, we hold that the death sentence imposed on the defendant was neither excessive nor disproportionate to the penalty imposed in similar cases in Maryland, considering both the crime and the defendant.

## XX

Finally, we are urged to reconsider our decisions in previous death penalty cases such as *Colvin, Calhoun, Johnson* and *Tichnell,* all *supra,* where we upheld the constitutionality of the Maryland death penalty statute. We decline to do so.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

ELDRIDGE, Judge, concurring:

I concur in the judgment affirming the murder conviction and death sentence in this case. I do not agree, however, with the majority's reasoning in Part I of the opinion.

Part I of the opinion addresses the first issue raised by Johnson. He challenges the trial court's denial of his pretrial motion requesting that defense witnesses be per-

mitted to testify regarding Johnson's "diminished capacity" to commit first degree murder. The majority upholds the trial court's ruling by citing *Stebbing v. State,* 299 Md. 331, 473 A.2d 903, *cert. denied,* —— U.S. ——, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984), and *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), which held that evidence of a criminal defendant's mental capability, which tends to negate his ability to form the requisite specific intent, is inadmissible during the guilt or innocence phase of a criminal trial. I continue to adhere to the view, expressed by Judge Cole, Judge Davidson and myself in *Johnson,* 292 Md. at 446–456, 439 A.2d 542, and in *Stebbing,* 299 Md. at 380–381, 390, 473 A.2d 903, that such evidence is admissible.

In the present case, the record reflects that Johnson's attorney made a pre-trial motion requesting that he be allowed to present testimony from "doctors on the question of diminished capacity as it relates to the elements of first degree murder." Counsel merely cited the dissenting opinion in *Johnson, supra,* 292 Md. at 444, 439 A.2d 542. The trial court, after consideration, denied the motion. Johnson neither renewed his motion at trial, nor made at any time a proffer as to the substance of the testimony which he desired to offer. The record does show, however, that expert testimony was elicited from defense witnesses on direct examination, and from the State's witnesses on cross examination, concerning all aspects of Johnson's mental and emotional state. No relevant evidence relating to his mental capability to form the requisite intent was either objected to or precluded from being admitted.

Preliminarily, there is a question as to whether a mere pre-trial motion, with nothing more, would under the circumstances here preserve the point for appeal. *Cf., Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Funkhouser v. State,* 51 Md.App. 16, 440 A.2d 1114, *cert. denied,* 293 Md. 331 (1982); *Ory v. Libersky,* 40 Md.App. 151, 389 A.2d 922, *cert. denied,* 283 Md. 737 (1978).

Nevertheless, assuming that the issue can be preserved by a pre-trial motion, it is settled that whenever one is complaining about a trial court's refusal to admit certain testimony, it is necessary that there be a proffer of what the evidence would have been. *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984); *Hooten v. Kenneth B. Mumaw P. & H. Co.,* 271 Md. 565, 571, 318 A.2d 514 (1974); *Keys v. Keys,* 251 Md. 247, 250, 247 A.2d 282 (1968). In the present case, at no time either during the making of the pre-trial motion or at trial did Johnson make any proffer, or make any showing on the record, of the nature of the actual testimony which he desired to introduce.

Finally, as previously mentioned, whatever evidence which Johnson may have wished to offer regarding his mental condition appears to have been elicited, without objection or exclusion, during the guilt or innocence phase of the trial.

For the above reasons, I believe that there is no merit to the first issue raised by Johnson.

Judge Cole has authorized me to state that he concurs with the views expressed herein.